### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### PACIFIC SOUTHWEST AIRLINES, Respondent.

### No. 75–1903.

United States Court of Appeals, Ninth Circuit.

Feb. 8, 1977.

---

Elliott Moore, Deputy Associate Gen. Counsel., N.L.R.B., Washington, D. C., for petitioner.

Meserve, Mumper & Hughes, Los Angeles, Cal., for respondent.

OPINION

Before CHOY and WALLACE, Circuit Judges, and RICHEY,* District Judge.

---

* The Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation.

CHOY, Circuit Judge:

The National Labor Relations Board, in accordance with § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), petitions this court to enforce its bargaining order issued against Pacific Southwest Airlines (PSA), reported in 201 N.L.R.B. 647 (1973). We conclude that the order should be enforced.

PSA operates a printing and publications shop at its principal place of business in San Diego, California. During 1971, James Heck was the "leadman" in the shop. In June 1971, six of the shop's eight employees signed authorization cards designating the Lithographers and Photoengravers International Union as their representative to bargain collectively on their behalf. Over succeeding months, PSA—principally through Heck and Thomas Irwin, the shop manager—pursued a course of conduct which included interrogation of employees about their union activities and sympathies, rescission of a previously-announced wage adjustment without assurances of future considerations, threats to lay off employees if the union were voted in, and the firing of Vernon Hover, a senior employee in the shop, because of his union activities.

### Unfair Labor Practice Charges

■ PSA attempts to minimize, but does not seriously deny, that Hover was wrongfully fired for his pro-union activities. It does urge, however, that Heck was not a "supervisor" within the meaning of § 2(11) of the Act [1] and, therefore, that his actions are not attributable to it. But there is substantial evidence to support the findings of both the trial examiner and the Board that Heck had authority to "responsibly direct" employees as required by section 2(11).

■ In any event, as we said under closely analogous circumstances in *N.L.R.B. v. L.*

B. *Foster Company*, 418 F.2d 1 (9th Cir. 1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970):

> Resolution of the supervisory status of [the employee in question] is not necessary for the purpose of determining whether the respondent violated section 8(a)(1). The Board found that the employer *acted through* [the employee]. Since his agency is supported by substantial evidence, his acts are attributed to the employer.

418 F.2d at 2 n.1 (emphasis in original). Since, as the Board properly found, PSA did act through Heck for the purpose of undermining the Union, those actions are fully attributable to it.

■ We believe that substantial evidence on the record as a whole supports the Board's finding that PSA engaged in these activities in violation of §§ 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (3). This is particularly true since Irwin's conduct (e. g., in firing Hover) accounted in substantial part for the unlawful acts complained of, and no one contests Irwin's supervisory status. We find PSA's other contentions on this question also lacking in merit, there being substantial evidence on the record as a whole to support the Board's findings.

### Appropriateness of Bargaining Order

PSA's principal contention is that however wrongful its conduct toward the Union, its nature falls short of the drastic and "pervasive" conduct required for implementation of a bargaining order. It argues that the Board should instead have ordered a new election.

In evaluating the Board's selection of remedies, we bear in mind the admonition set down in *N.L.R.B. v. Gissel Packing Company*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969):

---

1. 29 U.S.C. § 152(11) states:

    The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

It is for the Board and not the courts, however, to make that determination [whether a bargaining order is warranted], based on its expert estimate as to the effects on the election process of unfair labor practices of varying intensity. In fashioning its remedies under the broad provisions of § 10(c) of the Act (29 U.S.C. § 160(c)), the Board draws on a fund of knowledge and expertise all its own, and its choice of a remedy must therefore be given special respect by reviewing courts. 395 U.S. at 612, n.32, 89 S.Ct. at 1939.

In *Gissel*, the Court delineated three categories of wrongful employer conduct: (1) "exceptional" cases marked by "outrageous" and "pervasive" unfair labor practices, in which cases a bargaining order would be strongly endorsed; (2) "minor or less extensive" unfair labor practices which, because of their minimal effect on the election process, will not merit a bargaining order; and (3) "less extraordinary cases marked by less pervasive practices" which nevertheless still tend to undermine the majority strength and impede the election machinery, in which case a bargaining order is still warranted. The *Gissel* Court concluded:

> If the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue . . . . .

395 U.S. at 614–15, 89 S.Ct. at 1940.

We think that PSA's conduct in the case at bar falls into the third category above and that the preferences of the employees already expressed through cards should be protected by the order. Therefore, we affirm the Board's bargaining order.

Two questions arise in this case, however, which bear some additional scrutiny. Both relate to the propriety of the bargaining order, relative to other remedies which the Board could have ordered. They are: (1) Must the Board make specific findings and articulate its reasons when issuing a bargaining order; and (2) does the lapse of time involved in the case at bar—over five years—affect the propriety of the bargaining order?

### Findings of Fact and Articulation of Reasons

At oral argument, counsel for PSA called our attention to *Peerless of America, Inc. v. N.L.R.B.*, 484 F.2d 1108 (7th Cir. 1973), in which the court was disturbed about the perfunctory quality of the Board's findings. There, in quashing a bargaining order of the NLRB as unwarranted by the circumstances, the court said:

> We have consistently held that *Gissel* contemplates that the Board must make "specific findings" as to the immediate and residual impact of the unfair labor practices on the election process and that the Board must make "a detailed analysis" assessing the possibility of holding a fair election in terms of any continuing effect of misconduct, the likelihood of recurring misconduct, and the potential effectiveness of ordinary remedies. *But once again the Board has failed to give a satisfactory explanation of its decision. . . . This substitution of conclusion for explanation does not permit a reviewing court to do its job.*
>
> . . . [W]e cannot responsibly guard against administrative arbitrariness unless the Board explains in what respects this case differs from the others.

484 F.2d at 1118–19 (emphasis added; citations & footnotes omitted).[2]

---

**2.** The Seventh Circuit went on to question the "presumed expertise" of the Board to make judgments as to the effect of employer misconduct on the prospects for a fair union election:

> [T]hat presumed expertise does not relieve the Board of its responsibility to explain its conclusions in terms reviewing courts can

understand. Insofar as they can be discerned, it is beginning to appear that many of the Board's expert assumptions about the impact of employer misconduct on employee voting behavior are invalid. Nevertheless, until they are conclusively invalidated, we must accept plausible assumptions in this

The problems troubling the Seventh Circuit have been noted by other courts. *See, e.g., N.L.R.B. v. Gibson Prod. Co. of Washington Parish, La., Inc.,* 494 F.2d 762, 766 (5th Cir. 1974) ("The Board is under an obligation to articulate its reasoning and to distinguish factually similar cases with contrary results."); *N.L.R.B. v. Armcor Industries, Inc.,* 535 F.2d 239, 244–45 (3d Cir. 1976) (case remanded for more detailed findings by Board).

It is customary for the Board to make findings of fact on which to base its order. Indeed, this is mandated by § 10(c) of the Act.[3] The law does not, however, explicitly state that the Board must specify its reasons for so acting. Nevertheless, in light of the mandatory findings of fact, together with the statutory requirement that the order be reasonable and substantiated by the evidence,[4] it follows that the fact findings are in most cases tantamount to the reasons for which the order was issued.

■ There is controversy, however, as to the specificity and detail with which these orders should be stated. We believe that to the maximum extent possible they should reflect the reasoning behind the remedy selected. *Secretary of Agriculture v. United States,* 347 U.S. 645, 655, 74 S.Ct. 826, 98 L.Ed. 1015 (1954); *City of Lawrence, Massachusetts v. C.A.B.,* 343 F.2d 583, 588 (1st Cir. 1965). *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In no case should orders and findings of fact be perfunctory or "boiler-plate," as is sometimes the case. *See, e. g., N.L.R.B. v. Armcor Industries, Inc.,* 535 F.2d 239, 244 (3d Cir. 1976); *Walgreen Co. v. N.L.R.B.,* 509 F.2d 1014, 1018 (7th Cir. 1975); *N.L.R.B. v. Gibson Prod. Co. of Washington Parish, La., Inc.,* 494 F.2d 762, 766–67 (5th Cir. 1974).

■ On this point we agree with the Seventh Circuit. Effective appellate review, as well as judicial and administrative accountability, requires that the Board clearly articulate the reasons behind any order, and particularly why other remedies were found to be inappropriate. *N.L.R.B. v. Gissel Packing Co.,* 395 U.S. 575, 614–15, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); *N.L.R.B. v. Four Winds Industries, Inc.,* 530 F.2d 75 (9th Cir. 1976).

■ In the case at bar, the findings of the trial examiner and the Board were, in fact, sufficient to support the bargaining order. The respondent's malfeasances were clearly set forth together with the reasons why its misconduct was so pervasive as to make a new election unfeasible. *See Pacific Southwest Airlines,* 201 N.L.R.B. 647, 657 (1973).

### Lapse of Time

Five years have elapsed since this matter was initiated. The question arises whether this delay vitiates the utility of the bargaining order in light of the possible turnover of the few printshop personnel involved, changes in the desires of the employees to be unionized, and other conditions. Should the Board instead be required to implement a new union election?

■ Concededly, a bargaining order based on authorization cards is considered less desirable than the free expression of employees in a fair election. *N.L.R.B. v. Gissel Packing Co.,* 395 U.S. 575, 603, 89

---

area, *but require their articulation and particularized application to the facts of each case.* 484 F.2d at 1118 n.16 (emphasis added; citations omitted).

**3.** Section 10(c) of the Act, 29 U.S.C. § 160(c), provides in part:

If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter.
. . .

**4.** Section 10(e) of the Act, 29 U.S.C. § 160(e) provides:

The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive.

S.Ct. 1918, 23 L.Ed.2d 547 (1969); *N.L.R.B. v. L. B. Foster Co.*, 418 F.2d 1, 3 (9th Cir. 1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970).

■ But the law is clear: The passage of time does not by itself compel a new election. As we said in *N.L.R.B. v. Coca-Cola Bottling Co. of San Mateo*, 472 F.2d 140 (9th Cir. 1972):

> [P]assage of time for the orderly adjudication of labor disputes cannot be used as a basis for denying an enforcement order. The relevant period for determining the appropriateness of the bargaining order is *as of when it was before the NLRB*. That there is a rapid turnover of employees does not militate against the appropriateness of the bargaining order.

472 F.2d at 141 (emphasis added; citations omitted). This rule was set down long ago by the Supreme Court in *Franks Bros. Co. v. Labor Board*, 321 U.S. 702, 704–05, 64 S.Ct. 817, 88 L.Ed. 1020 (1944).

■ There is a good reason for this rule, particularly where—as here—the lengthy and unfortunate delay since the union's formation has been caused by the employer. To hold otherwise would be to allow an employer to benefit from purposefully protracting litigation as long as possible. *N.L.R.B. v. International Van Lines*, 473 F.2d 1036, 1037 (9th Cir. 1973); *N.L.R.B. v. L. B. Foster Co.*, 418 F.2d 1, 4 (9th Cir. 1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970).[5]

Accordingly, in cases such as the one at bar, the appropriate time for determination of the propriety of a bargaining order relates back to the time when the case arose before the Board.

THE BOARD'S ORDER WILL BE ENFORCED.

---

5. In *Foster* we also said:

> The delay is not the fault of the union; if it is anyone's fault, it is that of the employer. But regardless of fault, it is an unfortunate but inevitable result of the process of hearing, decision and review prescribed in the Act. And to deny enforcement, with or without remand for reconsideration on the basis of facts occurring after the Board's decision, is to put a premium upon continued litigation by the employer; it can hope that the resulting delay will produce a new set of facts, as to which the Board must then readjudicate. Suppose that the Board does so, and again finds against the employer. There can then be a petition to this court, a decision by it, and a petition for certiorari to the Supreme Court. By that time there will almost surely be another new set of facts. When is the process to stop?

418 F.2d at 4. *See Franks Bros. Co. v. Labor Board*, 321 U.S. 702, 704–05, 64 S.Ct. 817, 88 L.Ed. 1020 (1944).