NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

ELY'S FOODS INC., d/b/a Scotto's I. G. A., Respondent.

No. 80–1779.

United States Court of Appeals, Eighth Circuit.

Submitted May 22, 1981.

Decided July 31, 1981.

McManus, Chief Judge, sitting by designation, concurred specially with opinion.

Michael J. Bobroff (argued), Sally E. Barker, and Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for Ely's Foods Inc., d/b/a Scotto's I. G. A.

Robert G. Sewell, Judith A. Dowd (argued), Attys., N. L. R. B., Washington, D. C., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., for petitioner.

Before GIBSON, Senior Circuit Judge, ARNOLD, Circuit Judge, and McMANUS,[*] District Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The National Labor Relations Board (Board) petitions this court for enforcement of its order directing Ely's Foods to bargain with the Retail Store Employees Union and United Food and Commercial Workers International Union. Ely's Foods contests the bargaining order on the grounds that the Board's decision and the record fail to support the remedy of a bargaining order. We enforce the Board's order.

On May 29, 1980, the Board issued a decision and order declaring that Ely's Foods had violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1976). The Board adopted the findings and conclusions of the administrative law judge (ALJ). The Board's decision and order and the ALJ's decision are fully reported in Ely's Foods Inc., 249 N.L.R.B. 909 (1980).

Briefly, the factual circumstances surrounding the section (8)(a)(1) violations are the following. In January 1979, the unions began a joint organizing effort among the grocery clerks and meatcutters at Scotto's I.G.A. in Brookfield, Missouri. Scotto's is a moderately sized, family-run supermarket owned by Otto Ely and is the only store operated by Ely. On February 2 and 3, 1979, an employee of the supermarket presented to Ely the names of twenty-one grocery employees, out of a total of twenty-eight, who had signed cards authorizing the Retail Store Employees Union to be their bargaining agent. On February 5, the same employee advised Ely that the three meatcutters had agreed to authorize the United Food and Commercial Workers Union to be their bargaining agent.

The ALJ found that Otto Ely, upon being advised of the organizational campaign on February 2, 1979, summoned an employee into his office and interrogated her regarding her union participation and the union activities of others. The following day Ely advised a number of employees that a unionized store would result in more restrictive terms and conditions of employment and that layoffs were possible if he was going to have to pay union wages. On that same day Ely also promised two employees that he would find additional hours of work for them.

On February 6, 1979, the Retail Store Employees Union filed a petition for an election in the grocery clerk unit. The election was scheduled for February 28. On the day before the election, Ely promised an employee a wage increase "when the mess [union election] was over with." Finally, on the morning of the election, Ely threatened a tardy employee with more arduous working conditions while reprimanding him for being one hour late.

[*] The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

The election was held and the company won. The vote was ten for the union and sixteen against, with two votes challenged. The union filed objections to the election with the Board. The election among the meatcutters was never held. The United Food and Commercial Workers Union, however, also filed objections concerning the conduct of the company with regard to the meatcutters.

■ In the matter of the meatcutters' union representation, the ALJ found that Pat Burstert, in charge of the meat department, was a supervisor who committed section 8(a)(1) violations. Burstert stated at various times to the meatcutters that Ely would like to enter into a direct agreement with them and that they should pursue such negotiations, either individually or collectively, without regard to a union. Burstert indicated that the meatcutters could expect to receive substantially increased benefits if they did so. Finally, on March 9, 1979, after the grocery clerk union election, Burstert told a meatcutter that three replacements had been hired for their positions. The ALJ construed this to be a direct threat to the meatcutters "that they were to be discharged as a result of their continued union activity." *Ely's Foods Inc.*, 249 N.L.R.B. at 914.

The ALJ and the Board found the above activities to be violations of section 8(a)(1). Ely's Foods does not contest these findings.[1] It contends instead that the bargaining order should not be enforced because neither the Board's decision nor the record contain facts sufficient to support the remedy of a bargaining order.

The Supreme Court, in *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 612, 89 S.Ct. 1918, 1939, 23 L.Ed.2d 547 (1969), reviewed the policy reasons behind issuance of a bargaining order:

[A] bargaining order is designed as much to remedy past election damage as it is to deter future misconduct. If an employer has succeeded in undermining a union's strength and destroying the laboratory conditions necessary for a fair election, he may see no need to violate a cease-and-desist order by further unlawful activity. The damage will have been done, and perhaps the only fair way to effectuate employee rights is to re-establish the conditions as they existed before the employer's unlawful campaign. [Footnotes omitted.]

Ely's Foods, however, argues that a bargaining order is not appropriate because the Board failed to engage in a specific factual analysis of the reasons why a bargaining order remedy was necessary, and there was no showing why a traditional "cease and desist" order would not suffice. *See, e.g., Red Oaks Nursing Home, Inc., v. NLRB*, 633 F.2d 503, 508–09 (7th Cir. 1980); *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 215 (2d Cir. 1980); *NLRB v. Pilgrim Foods, Inc.*, 591 F.2d 110, 119 (1st Cir. 1978). The ALJ in this case, in recommending issuance of a bargaining order, made the following findings:

I am convinced that under applicable Board precedent the election in the Retail Clerks unit should be set aside, and I further find that a full and proper remedy requires the issuance of bargaining orders in both units as contended by the General Counsel. The numerous unfair

---

1. Ely's Foods' brief suggests that Burstert was only a "marginal supervisor." Respondent's brief at 22. We agree with the Board and the ALJ that Burstert was a supervisor within the meaning of section 2(11) of the NLRA, 29 U.S.C. § 152(11) (1976). Burstert is in charge of the meat department. The ALJ found that Burstert sets hours for the meatcutters and exercises authority in the area of working conditions. He has also successfully recommended pay raises and reprimands. We must give deference to the Board's determination on this issue. *See NLRB v. Harmon Industries*,

565 F.2d 1047, 1051 (8th Cir. 1977). We conclude that Burstert exercised sufficient "independent judgment" with regard to these work functions to qualify as a supervisor within the meaning of section 2(11). *See id.* at 1049; *cf. NLRB v. Yeshiva University*, 444 U.S. 672, 682 n.13, 100 S.Ct. 856, 862 n.13, 63 L.Ed.2d 115 (1980) (an employee may be excluded if he has authority over any one of twelve enumerated personnel actions in section 2(11)). *See generally* Note, *The NLRB and Supervisory Status: An Explanation of Inconsistent Results*, 94 Harv.L.Rev. 1713 (1981).

labor practices, found above, particularly those unfair labor practices wherein Respondent, both through Otto Ely and Burstert, promised benefits to employees and threatened employees with layoff and discharge as a consequence of their selecting either Union as their collective-bargaining representative, mandate the conclusion that the possibility of erasing the effects of the aforementioned unfair labor practices by other traditional remedies, and of insuring fair elections, is slight. Under the circumstances it is clear that the desire of the employees, overwhelmingly expressed by their signatures on authorization cards, warrants the imposition of bargaining orders in each respective unit.

*Ely's Foods Inc.*, 249 N.L.R.B. at 914.

■ Ely's Foods contends that this paragraph constitutes nothing more than a perfunctory conclusion. While we agree that the specific factual findings of the Board and the ALJ with regard to the necessity of a bargaining order were perhaps less than desirable for appellate review and present only a marginal case for bypassing the preferred election procedure, we find that the complete findings of the Board, *see Ely's Foods Inc.*, 249 N.L.R.B. at 913–14, and the record as a whole support issuance of a bargaining order in this case.

■ In reviewing whether a bargaining order should issue, this court must give "special respect" to the Board's determination. "[T]he Board draws on a fund of knowledge and expertise all its own, * * *." *NLRB v. Gissel Packing Co.*, 395 U.S. at 612 n.32, 89 S.Ct. at 1939 n.32. The Supreme Court, in *Gissel Packing Co.*, outlined the factors the Board should consider in the case of election violations of the type involved in this case:

> The Board's authority to issue such an order on a lesser showing of employer misconduct is appropriate, we should re-emphasize, where there is also a showing that at one point the union had a majority; in such a case, of course, effectuating ascertainable employee free choice becomes as important a goal as deterring

employer misbehavior. In fashioning a remedy in the exercise of its discretion, then, the Board can properly take into consideration the extensiveness of an employer's unfair practices in terms of their past effect on election conditions and the likelihood of their recurrence in the future. If the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue (see n.32, *supra*).

*NLRB v. Gissel Packing Co.*, 395 U.S. at 614–15, 89 S.Ct. at 1940.

In examining the bargaining order in this case, we find that the unions clearly had a large majority at the time the authorization cards were signed in early February 1979. Of equal importance is the fact that the store in issue here was family-run, located in a small town. Otto Ely's actions can therefore be expected to have a pervasive effect upon his employees in a limited local labor market. These considerations support the Board's and the ALJ's conclusions that "the possibility of erasing the effects of the aforementioned unfair labor practices by other traditional remedies, and of insuring fair elections, is slight." *Ely's Foods Inc.*, 249 N.L.R.B. at 914.

In enforcing the Board's order, however, we reiterate the Supreme Court's admonition in *Gissel Packing Co.*, 395 U.S. at 613, 89 S.Ct. at 1939: "There is, after all, nothing permanent in a bargaining order, and if, after the effects of the employer's acts have worn off, the employees clearly desire to disavow the union, they can do so by filing a representation petition."

Enforced.

McMANUS, Chief District Judge, concurring specially.

The panel determines to enforce the Board's bargaining order, having elected not to adopt the majority view of the courts

of appeal with respect to the specific factual analysis required of the Board in cases such as this. *NLRB v. Jamaica Towing, Inc.*, 602 F.2d 1100 (2d Cir. 1980); *NLRB v. Appletree Chevrolet, Inc.*, 608 F.2d 988 (4th Cir. 1979); *NLRB v. Pilgrim Foods, Inc.*, 591 F.2d 110 (1st Cir. 1978); *NLRB v. Pacific Southwest Airlines*, 550 F.2d 1148 (9th Cir. 1977); *NLRB v. Armcor Industries*, 535 F.2d 239 (3d Cir. 1976); *Peerless of America, Inc. v. NLRB*, 484 F.2d 1108 (7th Cir. 1973); *NLRB v. American Cable Systems, Inc.*, 427 F.2d 446 (5th Cir. 1970). I agree with the result in the case at bar, although I feel that the better approach to these cases is that of the above circuits.

The leading Supreme Court case in this area is, of course, *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). There the court sanctioned the imposition of a bargaining order remedy under circumstances as were present here upon findings by the Board that "the possibility of erasing the effects of past practices and of ensuring a fair election ... by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order." 395 U.S. at 614–615, 89 S.Ct. at 1940. In applying this language to the cases before them, the majority of the circuits requires the Board to (1) make specific findings as to the immediate and residual impact of unfair labor practices on the election process; (2) undertake a detailed analysis assessing the possibilities of holding a fair election in terms of any continuing effect of employer misconduct, the likelihood of recurring misconduct, and the potential effectiveness of traditional remedies; and (3) reconcile the issuance of the bargaining order with prior decisions in which no such order was issued. *E.g. Peerless of America, Inc. v. NLRB*, 484 F.2d 1108, 1118 (7th Cir. 1973).

In addition to the *Gissel* language, these circuits have justified their approach based on their appellate responsibility to review the administrative process. As stated in *NLRB v. Armcor Industries*, 535 F.2d 239, 245 (3d Cir. 1976) (citations omitted):

Requiring the [Board] to state its reasons enables the reviewing court to 'guarantee the integrity of the administrative process....' It also contributes to the growth and predictability of this important area of labor law. In addition, the 'requirement that the [Board] provide analysis and findings serves as a prophylaxsis against an arbitrary exercise of the [Board's] power.'

Lastly, these circuits have indicated that such requirements are consistent with the general principle that an open, free election is the preferred method of establishing a union's representative status, *e.g., NLRB v. Armcor Industries*, 535 F.2d 239, 244 (3d Cir. 1976), as has this circuit. *Ante* at 292.

I am aware of and approve the legal standard of review that requires us to give deference to the Board on these matters. But I suggest that such deference is not warranted where the Board has merely set forth a litany, reciting conclusions by rote without any factual explication. *NLRB v. Yeshiva University*, 444 U.S. 672, 100 S.Ct. 856 (1980) (reliance on conclusions unsupported by factual analysis precludes grant of deference to Board's expertise); *see NLRB v. Pacific Southwest Airlines*, 550 F.2d 1148, 1151–52 (9th Cir. 1977) (Board orders on findings should not be boilerplate); *NLRB v. Kaiser Agr. Chem., Div. of Kaiser A&C Corp.*, 473 F.2d 374 (5th Cir. 1973) (same). However, a thorough, independent review of this record indicates that the bargaining order should be enforced. To send this case back, therefore, would be a wasted effort and delay. *See Peerless of America, Inc. v. NLRB*, 484 F.2d 1108 (7th Cir. 1973). However, I again emphasize that the better procedure, in my view, is the majority approach outlined above.