NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BUCKLEY BROADCASTING CORPORATION OF CALIFORNIA, dba Station KKHI, Respondent.

No. 88–7106.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1989.

Decided Dec. 7, 1989.

Peter Winkler and Charles Donnelly, N.L.R.B., Washington, D.C., for petitioner.

Victor P. Reed, San Francisco, Cal., for respondent.

Della Bahan, Reich, Adell & Crost, Los Angeles, Cal., for intervenor Nat. Ass'n of Broadcast Employees & Technicians, Local 51, AFL–CIO.

Before CHAMBERS, BRUNETTI, and NOONAN, Circuit Judges.

BRUNETTI, Circuit Judge:

The National Labor Relations Board ("NLRB") petitions for enforcement of its bargaining order against respondent Buckley Broadcasting Corporation ("Buckley"). We have jurisdiction pursuant to 29 U.S.C. § 160(e) and affirm the NLRB's order of enforcement.

## FACTS AND PROCEEDINGS BELOW

The facts underlying this case are not in dispute. Buckley operates radio station KKHI in San Francisco. For many years it has had a collective bargaining relationship with the National Association of Broadcast Employees and Technicians ("NABET"), representing the company's engineering and technical employees, and the American Federation of Radio and Television Artists ("AFTRA"), representing the company's broadcast announcers. The last contract between Buckley and NABET expired on February 1, 1978. Negotiations for a new contract failed after Buckley proposed to assign both broadcast and engineering duties to the on-air announcer, a departure from the customary practice of having separate employees perform each function. NABET objected to this operating scheme, and when Buckley's "final offer" for combined operations did not meet with its approval, Buckley's five technicians and engineers went on strike. Eventually two of the striking employees resigned.

In late 1979 and early 1980 Buckley hired five permanent replacements for the striking engineers and implemented its new combined operating scheme. NABET then instituted proceedings with the AFL–CIO against AFTRA, claiming that the announcers were doing technician work in violation of Article XX of the AFL–CIO constitution. The AFL–CIO ruled in favor of NABET in October 1980. When this dispute was resolved in its favor, NABET approached Buckley and requested further negotiations in light of these "changed circumstances." Buckley responded by denying that NABET was still the representative of the engineering and technical employees, citing the lapse of time that had occurred between the expiration of the collective bar-

gaining agreement and the renewed request for negotiations.

NABET then filed a complaint with the NLRB charging Buckley with an unfair labor practice. A hearing was held before an Administrative Law Judge ("ALJ") on August 6, 1981. The ALJ found that Buckley, by withdrawing recognition from NABET and refusing to bargain with it, engaged in an unfair labor practice within the meaning of sections 8(a)(1) and (5) of the National Labor Relations Act. Accordingly, the ALJ recommended that Buckley be ordered to cease and desist from withholding recognition from NABET and from refusing to bargain with NABET.

On July 27, 1987 the NLRB adopted the recommended order, affirming the ALJ's findings of fact and conclusions of law. *Buckley Broadcasting Corp. v. National Association of Broadcast Employees and Technicians, Local 51*, 284 N.L.R.B. No. 113 (1987). The NLRB has applied for enforcement of its bargaining order.

## STANDARD OF REVIEW

■ We will uphold the decision of the NLRB if it correctly applied the law and if its factual findings are supported by substantial evidence on the record. *NLRB v. Island Film Processing Co.*, 784 F.2d 1446, 1450 (9th Cir.1986). Because the facts in this case are not disputed we will confine our review to the Board's application of the law. Generally the court of appeals will not deny enforcement of an NLRB order unless the Board clearly departs from its own standards or the standards are themselves invalid. *See Garcia v. NLRB*, 785 F.2d 807, 809 (9th Cir.1986) (deferral decision).

## DISCUSSION

Buckley's argument is two-fold. First, it argues that the NLRB exceeded its authority by retroactively invalidating certain presumptions that Buckley claims to have relied on in withdrawing recognition of NABET. Alternatively, Buckley argues that if the NLRB was correct in finding a violation of the Act, the imposition of a bargaining order is not the proper remedy in light of the passage of time and employee turn-over that has occurred since recognition was withdrawn. We address each argument in turn.

### A. *Presumptions*

■ Once a union is recognized by an employer, the union is conclusively presumed to command majority support. *NLRB v. Wilder Construction, Inc.*, 804 F.2d 1122, 1124 (9th Cir.1986); *Mingtree Restaurant, Inc. v. NLRB*, 736 F.2d 1295, 1296–97 (9th Cir.1984). The presumption becomes rebuttable after the expiration of a collective bargaining agreement. *See NLRB v. Vegas Vic, Inc.*, 546 F.2d 828, 829 (9th Cir.1976), *cert. denied*, 434 U.S. 818, 98 S.Ct. 57, 54 L.Ed.2d 74 (1977). Before an employer can withdraw from union recognition it must rebut the presumption of majority support by showing with clear and convincing evidence that at the time of withdrawal it has a good faith reasonable doubt of the union's continued majority support. *See Whisper Soft Mills, Inc. v. NLRB*, 754 F.2d 1381, 1387 (9th Cir.1984); *NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 297–98 (9th Cir.1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979). The ALJ applied this presumption in finding Buckley guilty of violating the Act by withdrawing recognition from the union.

■ When permanent employees are hired to replace strikers, the Board has applied another rebuttable presumption, the *Pennco* presumption, that the strike replacements support the union in the same proportion as the striking employees. *See NLRB v. Pennco, Inc.*, 250 N.L.R.B. No. 716 (1980). *Pennco* type presumptions, however, have generally met with disfavor in the courts. *See NLRB v. Pennco, Inc.*, 684 F.2d 340, 343 (6th Cir.) (unknown sentiments of strike replacements could only "put the parties in equipoise," and would be insufficient to rebut presumption of continued union representation), *cert. denied*, 459 U.S. 994, 103 S.Ct. 355, 74 L.Ed.2d 392 (1982); *Whisper Soft Mills, Inc. v. NLRB*, 754 F.2d 1381, 1388 (9th Cir.1984) ("[T]he presumption that strike replacements support the union in the same ratio as strikers has never been embraced by any circuit.");

*Soule Glass and Glazing Co. v. NLRB,* 652 F.2d 1055, 1110 (1st Cir.1981) (striker replacements generally assumed not to support the union); *National Car Rental System, Inc. v. NLRB,* 594 F.2d 1203, 1206 (8th Cir.1979) (striker replacements presumed opposed to union); *NLRB v. Randle–Eastern Ambulance Service, Inc.,* 584 F.2d 720, 728 (5th Cir.1978) (same). In finding Buckley guilty of an unfair labor practice the ALJ applied *Pennco* and concluded that Buckley had failed to rebut the presumption of continuing majority support of the union.

The basis for Buckley's good faith doubt was the time that had elapsed between the expiration of the bargaining agreement in February 1978 and the withdrawal of recognition in October 1980. This was supported by affidavits from the five replacement employees stating that they had not been contacted by the union. Buckley argued that *Arkay Packaging Corp.,* 227 N.L.R.B. No. 397 (1976) established precedent for making the passage of time a relevant consideration for withdrawal of union recognition, and that coupled with the affidavits of the employees it would be reasonable to assume that the strike replacements would be opposed to union representation.

*Arkay Packaging* involved unit abandonment by the union; the union made no attempt to insure compliance with a collective bargaining agreement that was in effect, and it failed to respond to the employer's written notification that striking employees would be replaced if they failed to return to work. Confining *Arkay Packaging* to its "unique circumstance" of apparent union abandonment, the ALJ declined to apply it to the facts of this case and concluded that Buckley had unlawfully withdrawn from union recognition. Accordingly, he recommended an order requiring Buckley to recognize the union and resume negotiations.

On appeal to the NLRB the Board affirmed the ALJ's decision and issued the bargaining order, but abolished the *Pennco* presumption that permanent strike replacements support a union in the same propor-

tion as the employees they replace. *Buckley Broadcasting,* 284 N.L.R.B. No. 113 at 5. In declining to adopt *Pennco,* the Board opted instead for a position of neutrality:

> [W]e can discern no overriding generalization about the views held by strike replacements and therefore we decline to maintain or create any presumptions regarding their union sentiments. Rather, we will review the facts of each case, but will require "some further evidence of union non-support" before concluding that an employer's claim of good-faith doubt of the union's majority "is sufficient to rebut the overall presumption of continuing majority status.

*Buckley Broadcasting,* 284 N.L.R.B. No. 113 at 17.

### B. *Retroactivity*

Buckley argues that the Board's decision cannot be implemented "as a matter of equity" because it has the effect of retroactively invalidating presumptions that it relied on in withdrawing union recognition. However, the Board is free to alter its standards provided the changes are rational and consistent with the provisions of the Act. *Hotel and Restaurant Employees v. NLRB,* 760 F.2d 1006, 1008–09 (9th Cir. 1985).

In *Mesa Verde Construction Co. v. Northern California District Council of Laborers,* 861 F.2d 1124, 1137–38 (9th Cir. 1988), an en banc panel of this court noted three factors that are applicable to retroactivity analysis:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce sub-

stantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."
*Id.* (quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

Buckley's argument fails under the third factor. There is no possibility of an inequitable result from retroactive application of the Board's new standard because the new standard works to Buckley's advantage by abolishing the presumption of proportionality in striker replacements.[1] Moreover, under either standard Buckley would be required to come forward with some evidence of the sentiments of the strike replacements to overcome the presumption of majority support.

Looking at the other two factors, there is no "clear past precedent" in this area. The only presumption that Buckley could have relied on is that the strike replacements were opposed to the union. This position has never been endorsed by this court. *See Whisper Soft Mills,* 754 F.2d at 1387–88 ("The Administrative Law Judge acknowledged that the mere fact that other employees crossed the line to work does not evidence and is insufficient to establish a good faith belief in a loss of majority status...."). Weighing the merits of the Board's new standard it is apparent that Buckley can claim no harm—again because the new standard makes it easier for an employer to withdraw from union recognition.

There has been no showing of "unique circumstances" that would support an assumption that the strike replacements were opposed to the union. *See id.* at 1388. The new standard does not force an inequitable result upon the respondent, and for that reason the respondent's retroactivity argument fails.

## C. *Remedy*

■ Buckley objects to the "drastic" remedy of a bargaining order, suggesting instead that the passage of time and employee turnover in this case would make a representation election or a remand for reconsideration of the need for a bargaining order more appropriate. We disagree.

The Supreme Court's decision in *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 613–16, 89 S.Ct. 1918, 1939–41, 23 L.Ed.2d 547 (1975), discusses the propriety of a bargaining order in this type of situation. *Gissel Packing* involved an employer's refusal to bargain in addition to independent unfair labor practices that would have made a fair election unlikely. In such cases, the Court noted, "the Board is not limited to a cease-and-desist order.... If the Board could enter only a cease-and-desist order and direct an election or a rerun, it would in effect be rewarding the employer and allowing him 'to profit from [his] own wrongful refusal to bargain.' " *Id.* at 610, 89 S.Ct. at 1938. (quoting *Franks Bros. Co. v. NLRB,* 321 U.S. 702, 704, 64 S.Ct. 817, 818, 88 L.Ed. 1020 (1944)). The Court continued by noting that "[t]he Board's authority to issue the [bargaining] order is appropriate, we should reemphasize, where there is also a showing that at one point the union had a majority...." *Id.* 395 U.S. at 614, 89 S.Ct. at 1940.

Here there is no question that the union enjoyed majority status at least until the strike was called. Because the Board properly determined that Buckley had committed an unfair labor practice by withdrawing union recognition, it follows that under *Gissel Packing* the proper remedy was a bargaining order.

Regarding Buckley's argument that the passage of time since it withdrew recognition should be a consideration, this court has already held that the passage of time since the withdrawal of recognition is irrelevant. *See NLRB v. Pacific Southwest Airlines,* 550 F.2d 1148, 1153 (9th Cir.

---

**1.** The *Pennco* presumption would not help the respondent's position even if it were applicable. The ALJ noted that the two strikers that resigned did so after recognition was withdrawn in November 1980. Thus, when Buckley decid-

ed to withdraw union representation there were five strikers and five replacements. With this ratio it would appear that the union would have continuing majority representation under *Pennco.*

1977). Were it otherwise, the *Pacific Southwest* court reasoned, an employer could benefit from causing excessive delays in the appellate process. *Id.* Similarly, employee turnover since the withdrawal of union recognition is not a relevant consideration. *Id.; NLRB v. Wilder Construction Co.*, 804 F.2d 1122, 1124–25 (9th Cir.1986) (where the existence of a good faith doubt as to continued majority representation is at issue, the objective facts must be evaluated as of the date of the refusal to bargain).

Buckley's final claim that this remedy will result in "coerced representation" is without merit. "There is, after all, nothing permanent in a bargaining order, and if ... the employees clearly desire to disavow the union, they can do so...." *Gissel Packing*, 395 U.S. at 613, 89 S.Ct. at 1939.

CONCLUSION

Because Buckley failed to produce any evidence that the replacement employees were opposed to union representation it failed to overcome the presumption that the union had continued majority representation. Buckley's retroactivity argument fails because the new standard makes it easier for an employer to withdraw union recognition, and under either standard Buckley would have had to present some evidence of the union sentiments of the replacements. A bargaining order is the proper remedy in this situation. The NLRB's order is affirmed, and enforcement of the NLRB's bargaining order is granted.

Enforcement GRANTED.