LOCAL 384, INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS, CHAUF-
FEURS, WAREHOUSEMEN & HELP-
ERS OF AMERICA by Silverius G.
Carr, Trustee ad litem

v.

Maurice PATANE, Individually and t/a
Bucks Products Ready Mix Con-
crete Co.

Civ. A. No. 33174.

United States District Court
E. D. Pennsylvania.

Aug. 5, 1964.

Edward Davis, Philadelphia, Pa., for plaintiff.

Edward Gibbons, Jr., of Moore, James, Wright & Gibbons, Philadelphia, Pa., for defendant.

BODY, District Judge.

The complaint in this action was filed by Local 384, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America by Silverius G. Carr, Trustee ad litem, seeking specific performance of certain sections of a collective bargaining agreement that was entered into with the defendant, Maurice Patane, individually and t/a Bucks Products Ready Mix Concrete Co. The agree-

ment covered the period from April 1, 1960 to December 31, 1962.

Plaintiff avers more specifically that defendant "has failed, refused and neglected" to make contributions to the Teamsters Pension Trust Fund of Philadelphia and Vicinity and the Teamsters Health and Welfare Fund of Philadelphia and Vicinity. The deficiency claimed under the Pension Trust Fund is $3,496.60 and $3,328.00 is alleged to be due under the Health and Welfare Fund, including life insurance. Defendant has filed this motion which is now before the Court, seeking a dismissal of the complaint due to lack of jurisdiction, or an order compelling arbitration either by granting a stay of the proceedings pending arbitration, or by granting an order specifically enforcing the arbitration agreement embodied in the contract.

Jurisdiction is sought by authority of Section 301 of the Act of June 23, 1947, 29 U.S.C.A. § 141 et seq., as amended and known as the Labor Management Relations Act. Section 301(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an *industry affecting commerce* as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (Emphasis supplied)

"Industry affecting commerce" is defined in § 501(1) as:

" * * * any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce."

Section 501(3) ascertains "commerce" as having the same meaning as when used in the National Labor Relations Act as amended by this Act.

Plaintiff averred in its complaint that the said business activities of the de-

fendant affected commerce within the meaning of the Labor Management Relations Act, while defendant solely alleged in his motion that he was not engaged in an industry affecting commerce. There were no further details, affidavits, or depositions.

From the above it was clear that the Court could not determine whether it had jurisdiction of the cause. Accordingly, by memorandum and order dated March 6, 1964 the Court permitted the plaintiff to file within sixty days any affidavits and/or depositions to sustain its allegation; and defendant was permitted to file, within thirty days of plaintiff's filing, any affidavits and/or depositions to sustain his allegations. The only document received by this Court within the above filing periods was a 42-page deposition of Maurice Patane, owner of Bucks Products Ready Mix Concrete Co., which was taken on May 1, 1964.

The additional facts revealed by the deposition are that the Bucks Products Ready Mix Concrete Co. (hereinafter referred to as Bucks) is a business engaged in the manufacture and delivery of ready-mixed concrete, located in New Britain, Pennsylvania. The essential raw materials used in this business are sand, gravel and cement. All the sand and gravel used by Bucks in its operations come from Durnam and Good which is located in Upper Black Eddy, Pennsylvania. The cement used in this operation is bought from the following cement companies: National Portland, Alpha Portland, Allentown, Universal Atlas, Keystone, Dragon, Whitehall and Nazareth. All these suppliers of cement are located in Pennsylvania, and more specifically in the Easton area.

The basic equipment comprising this operation includes a concrete plant, a conveyor belt, a front end loader, and eleven delivery vehicles. The concrete plant, costing approximately $13,000.00, was purchased in 1956 from Hetzel in Warren, Ohio; the conveyor belt was purchased for $12,000.00 from L. B. Smith in Harrisburg, Pennsylvania; and the front end loader was purchased for

742

$6,500.00 in 1960 from Industrial Sales in Chester, Pennsylvania. All the delivery vehicles were purchased from Pennsylvania dealers in a seven-year period from 1956 to 1963. Of the eleven delivery vehicles, normally six to eight are in constant operation while the others are being repaired in the shop on the premises.

The customer list evidences that the entire sales of Bucks were confined to a geographical area of about eight or nine miles extending radially from New Britain, Pennsylvania. These customers consisted primarily of home builders and swimming pool contractors. Bucks was not awarded any contracts by the Commonwealth of Pennsylvania or by the federal government. The gross volume of business conducted by Bucks from 1960 to 1962 was:

| 1960 | $277,989.17 |
| 1961 | $346,589.65 |
| 1962 | $290,330.27 |

These are the salient facts upon which this Court must rely in determining whether Bucks is such an industry as one "affecting commerce" as stated in the Labor Management Relations Act, and defined previously by the National Labor Relations Act. In arriving at my conclusion, it is essential that I review the many cases of the National Labor Relations Board in reference to its understanding of an industry "affecting commerce". These decisions, of course, are not in themselves determinative of the issue now before this Court for the National Labor Relations Board, unlike the District Court, is granted a discretionary power to decline jurisdiction. However, the rulings of the National Labor Relations Board in this area do bear upon the jurisdictional issue in this suit for presumably the determinations of the National Labor Relations Board were known to Congress when it enacted the Labor Management Relations Act. With the decisions of the National Labor Relations Board before it, Congress decided to reenact the jurisdictional language of the National Labor Relations Act specifically in reference to "commerce" without any alteration. Thus it would seem that this action amounts to a Congressional ratification of the policy of the National Labor Relations Board in this particular area.

■ From the facts presented in the deposition it is determined that the business activities of Bucks are in essence entirely intra-state since all of its customers are located in Pennsylvania, and all the raw materials used in the industry are bought in Pennsylvania. However, this does not preclude the Court from taking jurisdiction since an employer who is not engaged in interstate commerce, or who is not engaged in commerce at all, may be subject to the jurisdiction of the Board if it appears that the impact of a labor controversy would affect interstate commerce. N. L. R. B. v. Niles Fire Brick Co., 124 F.2d 366 (6 Cir. 1941), cert. den. 316 U.S. 664, 62 S. Ct. 944, 86 L.Ed. 1740. Further, the Labor Management Relations Act explicitly regulates not only transactions of goods in interstate commerce but activities which, in isolation, might be deemed to be merely local but involve an interlacing of business across state lines and thereby adversely affect interstate commerce. N. L. R. B. v. Ozark Dam Constructors, 190 F.2d 222, (8 Cir. 1951).

The leading principle was stated in N. L. R. B. v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014:

"* * * Examining the Act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis."

The meaning of de minimis in the law has been defined as taking notice of very small or trifling matters. Under the circumstances in this case, we cannot even apply the de minimis doctrine. There is no showing whatsoever that Bucks has

engaged in any interstate activity. The only interstate activity that has been shown was the purchase by Bucks of the plant for $13,000.00 in 1956. There has been no showing that the activity of Bucks indirectly affects, or would affect, commerce though Bucks itself is not directly in the flow of interstate commerce. There is no indication whether the modus operandi of the home builders or the swimming pool contractors involves interstate commerce.

This Court, in view of all the facts that are present before it, is of the opinion that the activities of Bucks Products Ready Mix Concrete Co. in no way affect interstate commerce directly or indirectly. Thus plaintiff has failed to meet the jurisdictional requirement as specified under the Labor Management Relations Act.

### ORDER

And now, this fifth day of August, 1964, in accordance with the foregoing opinion, it is ordered that the motion of Maurice Patane to dismiss the complaint be and the same is hereby granted.