**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**C. H. CROSS d/b/a Cross Poultry Company, Respondent.**

No. 9828.

United States Court of Appeals
Fourth Circuit.

Argued May 3, 1965.

Decided May 31, 1965.

**166**

Peter Giesey, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Nancy M. Sherman, Atty., N. L. R. B., on brief), for petitioner.

E. C. Brooks, Jr., Durham, N. C. (Allen, Steed & Pullen, Raleigh, N. C., and Brooks & Brooks, Durham, N. C., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

This is a petition by the National Labor Relations Board for the enforcement of its order directing the respondent, Cross Poultry Company, to cease and desist from certain unfair labor practices, to reinstate with back pay three employees and to take other action. Respondent resists on the ground that the Board lacks jurisdiction, claiming that the unfair labor practices were not proved to have affected interstate commerce.

Respondent operates a plant in Raleigh, North Carolina, where he is engaged in the processing of poultry products. During 1963 respondent produced and sold poultry products valued in excess of $500,000. These products, however, could not be shipped across state lines because they were not federally inspected. See 21 U.S.C.A. § 458(a). It is conceded that no poultry products produced by the respondent were sold outside North Carolina during the above period.

Most of the products were sold to two corporations that are engaged directly in interstate commerce. The North State Provision Co., a food wholesaler which does an interstate, as well as intrastate business, purchased over $300,000 worth of respondent's merchandise. Also during this period respondent sold products valued at more than $50,000 to Colonial Stores, Inc., an operator of retail food stores in several states with gross sales in excess of $10,000,000 annually.

Upon the above facts, the Board found that respondent's activities brought it within the jurisdiction of the National Labor Relations Act. Under section 10 (a) of that Act the Board is empowered "to prevent any person from engaging in any unfair labor practice affecting commerce." Section 2(7) defines "affecting commerce" to mean:

"* * * in commerce, or burdening or obstructing commerce, * * * or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

Pursuant to this grant of authority, the Board has determined, in the light of its experience, that non-retail employers who sell over $50,000 worth of goods to buyers engaged directly in interstate commerce are in a position to affect interstate commerce if their operations are

interrupted by a labor dispute. Siemons Mailing Service, 122 N.L.R.B. 81, 85 (1958). The Board has further ruled that the fact that the goods sold by the employer will never be used by the buyer in interstate commerce is irrelevant. Southern Dolomite, 129 N.L.R.B. 1342 (1961).

■■ The respondent first contends that its operations cannot possibly affect interstate commerce because its products, being uninspected, cannot be moved in such commerce. We cannot agree that an interruption in the supply of an intrastate product could not possibly disrupt a buyer's interstate business with resulting obstruction to interstate commerce. It is well established law that the mere fact that respondent's operations are purely intrastate does not mean that they may not affect interstate commerce. See, e. g., Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 220, 59 S.Ct. 206, 83 L.Ed. 126 (1938); see also United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 86 L.Ed. 726 (1942).

■ The respondent's further contention is that the Board is not empowered to rely on general jurisdictional rules but must determine in each case, on the basis of substantial evidence, that commerce has been affected by the activities of the particular employer. This case-by-case approach to jurisdictional questions has been criticized by scholars [1] and rejected by the Supreme Court. In one instance the Second Circuit accepted an argument such as that made by the respondent here and remanded an enforcement proceeding to the Board for a factual determination of how a work stoppage at the employer's place of business would affect commerce. National Labor Relations Board v. Reliance Fuel Oil Corp., 297 F.2d 94 (2d Cir. 1961). This decision, however, was reversed per curiam by the Supreme Court in National Labor Relations Board v. Reliance Fuel Oil Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963). The Court reminded that it had "consistently declared that in passing the National Labor Relations Act, Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." Supra, at p. 226, 83 S.Ct. at p. 313. The Court then quoted the following language from an earlier decision:

> "Whether or no practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate *for judgment is the fact* that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce." Polish Nat. Alliance of U. S. of North America v. National Labor Relations Board, 322 U.S. 643, 648, 64 S.Ct. 1196, 1199, 88 L.Ed. 1509 (1944).

■ Indisputably, large sales to buyers engaged in interstate commerce are within the constitutional reach of Congress. The Board was not in error in finding that respondent's sales to North State Provision and Colonial Stores brought its unfair labor practices within the compass of the Act.

Enforcement granted.

---

[1]. See Bok, The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L.Rev. 38, 64 (1964); Cox, Federalism in the Law of Labor Relations, 67 Harv.L.Rev. 1297, 1306 (1954)