NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

PENINSULA ASSOCIATION FOR
RETARDED CHILDREN AND
ADULTS, Respondent.

No. 79–7053.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 1980.

Decided Sept. 9, 1980.

Lawrence E. Blatnik, Washington, D. C., argued, for petitioner; Elliott Moore, Allison W. Brown, Jr., Washington, D. C., on brief.

Kathleen Marie Kelly, San Francisco, Cal., argued, for respondent; Nancy L. Ober, Littler, Mendelson, Fastiff & Tichy,

William C. Wright, San Francisco, Cal., on brief.

Before MERRILL and SKOPIL, Circuit Judges, and WYATT,* District Judge.

MERRILL, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order directing the Peninsula Association for Retarded Children and Adults ("the Association") to bargain with the Brotherhood of Teamsters and Auto Truck Drivers, Local 85, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America ("the Union"). The Association is a non-profit organization which raises funds by soliciting donations of merchandise which it sells to Thrift Village, Inc., which in turn sells the merchandise to the public at its two San Mateo County, California, stores.

In early January, 1977, Association employees involved in the solicitation operation (truck drivers and their "helpers") became dissatisfied with certain working conditions and began attempts to organize. The alleged unfair labor practices underlying the present action grew out of that attempt.

Although the Union alleged numerous unfair labor practices, the Board found only four violations of the National Labor Relations Act. Three of the violations involved proscribed interrogation of employees, one coupled with a threat, in violation of § 8(a)(1) of the Act. The Board also found that the Association had violated §§ 8(a)(1) and 8(a)(5) of the Act by refusing to bargain with the Union in February, 1977, after the Union had received authorization cards from a majority of the Association's employees.

A Board-ordered election was held in June, 1977; of eight ballots cast, one ballot was cast for the Union, one against, and six ballots were challenged. The Union then filed objections to the election and also filed unfair labor practice charges, on the basis of which the Board made its present findings of violations and ordered the Association to bargain with the Union. The Board seeks enforcement of its bargaining order.

### I. *Jurisdiction*

█ The Association contends that the Board has failed to demonstrate that the Association's activities have even the de minimis effect on interstate commerce required for the Board to assert jurisdiction.

While the standard which the Board must meet to establish jurisdiction is extremely liberal, and the Board's jurisdiction extremely broad, "it is not indeterminate, and must appear from the record; it cannot be presumed. In an enforcement proceeding, the burden of demonstrating jurisdiction is upon the Board." *NLRB v. Clark*, 468 F.2d 459, 466–67 (5th Cir. 1972). While we do not conclude that jurisdiction necessarily does not exist in the present case, we do conclude that the Board has failed to demonstrate, on this record, that it has jurisdiction.

The Board does not contend that the Association itself is directly engaged in interstate commerce. The Board focuses instead on the activities of Thrift Village with which the Association does business. The Board relies on the fact that checks for the merchandise sold to Thrift Village by the Association are mailed from Renton, Washington; that Thrift Village has stores in Washington, Oregon and California; and that there is some evidence that the Renton office is Thrift Village's "main office." There is nothing in the record, however, to indicate where Thrift Village is incorporated, whether it ever ships merchandise interstate, or whether it exercises any control over its local operations or, on the other hand, whether they are wholly or largely independent.

* Honorable Inzer B. Wyatt, Senior U.S. District Judge of the Southern District of New York, sitting by designation.

Even if this record would support the exercise of jurisdiction over Thrift Village, the Association's link to interstate commerce is too attenuated to support jurisdiction. At most, the Board has shown that the Association sells merchandise for local sale to a customer that may or may not ship merchandise interstate, and that may or may not exercise control over outlets in more than one state. "It would require an act of faith for us to conclude that [the Association's sales to Thrift Village] 'effect commerce' within the meaning of the Act." *NLRB v. Clark, supra,* 468 F.2d at 467.[1]

However, because we conclude that entry of a bargaining order was not warranted in this case, we do not remand to the Board for further findings on the jurisdictional issue, but proceed to the merits.

## II. *The Bargaining Order*

■ In *NLRB v. Gissel Packing Co., Inc.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court held that a bargaining order can properly be entered where three requirements are satisfied. First, that the union once had a card majority; second, that the employer committed serious unfair labor practices which, though less "outrageous" and "pervasive" than those which by themselves justify a bargaining order, undermined the union's majority and continue to impede the holding of a fair election; and third, that the likelihood of erasing the effects of the unfair practices and obtaining a fair election by the use of traditional remedies is slight, and that on balance the employees will best be

protected by entry of a bargaining order. 395 U.S. at 610–16, 89 S.Ct. at 1938–41.

■ *Gissel* emphasized that the determination of when a bargaining order is proper is for the discretion of the Board. 395 U.S. at 612 n. 32, 614, 89 S.Ct. at 1939, 1940; *NLRB v. Pacific Southwest Airlines,* 550 F.2d 1148, 1150–51 (9th Cir. 1977). However, the Court did not intend that this discretion be unbounded; it emphasized that some violations would not justify entry of a bargaining order. Here, we conclude that under the *Gissel* standards entry of the bargaining order was not justified. We are influenced in this determination by several factors.

Initially, we note that the violations were relatively mild. Two of the three interrogations were concededly noncoercive; one was actually initiated by the employee involved. The only coercive aspect of the third incident was solicitation manager William Hare's statement that "As long as I know the Association is not going to sign the contract and you guys are going to be off the job." A number of courts have declined to enforce a bargaining order where violations as serious or more serious than these have occurred. *See, e. g., NLRB v. Pilgrim Foods, Inc.,* 591 F.2d 110 (1st Cir. 1978); *First Lakewood Association v. NLRB,* 582 F.2d 416 (7th Cir. 1978); *NLRB v. East Side Shopper,* 498 F.2d 1334 (6th Cir. 1974); *NLRB v. General Stencils, Inc.,* 472 F.2d 170 (2d Cir. 1972).

Further, all of the violations occurred at least four months before the election. This long lapse of time militates against the conclusion that these relatively minor un-

---

1. The Board relies on *NLRB v. Cross,* 346 F.2d 165 (4th Cir. 1965), for the proposition that an intrastate employer who sells merchandise to an interstate employer is subject to jurisdiction under the Act, even though the merchandise never leaves the state. In *Cross,* however, there was no question as to the interstate nature of the buyer's operations. The Board also argues that the fact that Thrift Village is a multistate operation and exercises some control over its various outlets should suffice, citing *NLRB v. Daboll,* 216 F.2d 143 (9th Cir.), *cert. denied,* 348 U.S. 917, 75 S.Ct. 299, 99

L.Ed. 719 (1954), and *NLRB v. Smith,* 209 F.2d 905 (9th Cir. 1954). However, the only evidence that Thrift Village exercises any control over its outlets is that the Renton office mails the checks for the merchandise sold to Thrift Village by the Association. This may be the only centralized function of the Thrift Village operation. Further, in the cases cited there was clear evidence of interstate shipment of goods by the multistate firm, and the Board sought to assert jurisdiction over that firm, not over another employer which merely sold to it.

fair labor practices continued, in absence of repetition, to undermine support for the Union and to impede the holding of a fair election, as required by *Gissel*.[2]

Finally, the solicitation manager directly responsible for the violations and most of those employed at the time the violations occurred were no longer with the Association when the election was held. As the First Circuit recently noted in declining to enforce a bargaining order in similar circumstances:

> "The residual nature of [the supervisor's] conduct is, therefore, lessened by his departure and that of the other employees, as is the likelihood of the recurrence of his conduct. The record does not indicate that the employer will continue the unfair labor practices * * *."

*NLRB v. Pilgrim Foods, Inc., supra,* 591 F.2d at 120.[3]

While no one of these factors would necessarily preclude enforcement of the order, taken together they convince us that a bargaining order was not warranted. An election remains the preferred method for selection of a bargaining unit's representative. *See NLRB v. Gissel Packing Co., Inc., supra,* 395 U.S. at 602, 89 S.Ct. at 1934; *NLRB v. Pilgrim Foods, Inc., supra,* 591 F.2d at 120. Only an election guarantees employees their choice of representative. Here, enforcement of the bargaining order would impose upon current employees the bargaining representative chosen by their predecessors. In the absence of substantial evidence that a fair election cannot otherwise be had, this we decline to do.

The bargaining order will not be enforced.

**2.** The Board relies on *NLRB v. Pacific Southwest Airlines, supra,* and *NLRB v. Tri-State Stores, Inc.,* 477 F.2d 204, 207 (9th Cir.), *cert. denied,* 414 U.S. 1130, 94 S.Ct. 868, 38 L.Ed.2d 754 (1972), for the proposition that lapse of time and resultant employee turnover do not justify refusal to enforce a bargaining order. The Board misconstrues these cases: they hold that lapse of time *due to adjudication* will not preclude enforcement, particularly where such delay is caused by the employer. The period of

time between violation of the Act and holding of the election remains highly relevant in assessing the need for a bargaining order.

**3.** *Accord, First Lakewood Association v. NLRB, supra,* 582 F.2d at 424 (declining enforcement of a bargaining order where the supervisor directly responsible for most of the violations departed six weeks before the election).