**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1501, Plaintiff,**

v.

**AMERICAN TOTALISATOR COMPANY, INC., Defendant.**

Civ. A. No. J–81–2111.

United States District Court, D. Maryland.

Jan. 5, 1982.

**420**

Carl S. Yaller, Baltimore, Md., for plaintiff.

Jerald J. Oppel, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

International Brotherhood of Electrical Workers Local 1501 (the Union) filed this action to enforce an arbitration award against American Totalisator Company, Inc. (Amtote). Jurisdiction of this Court was invoked under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). Amtote has moved to dismiss for lack of subject matter jurisdiction under 29 U.S.C. § 185 because it is not an industry affecting commerce. Defendant relies on the decision of the National Labor Relations Board (NLRB) not to assert its jurisdiction over labor disputes in the horse and dog racing industries and related businesses, including Amtote. The parties have briefed the issues on this novel question of law, and oral argument is not necessary. *See* Local Rule 6.

Section 301 of the LMRA permits suits[1] for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter." 29 U.S.C. § 185(a). An "industry affecting commerce" is "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce." *Id.* § 142(1). The jurisdiction of the NLRB extends to questions and practices "affecting commerce," which is defined as "in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." *Id.* § 152(7).

■ The Board has authority to decline to exercise the full extent of its jurisdiction where it has decided that "the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction," *id.* § 164(c)(1), provided that it would not have exercised such jurisdiction under the standards on August 1, 1959. Before this provision was enacted, the NLRB had exercised less than the full extent of its jurisdiction by setting minimum dollar volumes of business and by exempting certain "essentially local" businesses. The Supreme Court held in 1957 and 1958 that the NLRB could not refuse to exercise jurisdiction over entire classes of employers. *Office Employers Int'l Union, Local No. 11 v. NLRB*, 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957) (unions as employers); *Hotel Employees Local No. 255 v. Leedom*, 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 143 (1958) (per curiam) (hotel industry). Congress affirmed the Board's authority to continue to exercise its discretion to decline jurisdiction under then applicable standards by enacting what is now 29 U.S.C. § 164(c)(1). The NLRB had before 1959 declined to assert jurisdiction over the horse and dog racing and related industries and has continued this policy. 29 C.F.R. § 103.3, 82 LRRM 1737. It has specifically declined to modify the rule to include Am-

---

1. Section 301 is both substantive and jurisdictional. E.g., *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 76 n. 7 (4th Cir.) *cert. denied*, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967). Only jurisdiction is involved in this case; there is no question that a suit to enforce an arbitration award may be brought under § 301, *General Drivers, Warehousemen & Helpers, Local No. 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963) (per curiam).

tote. *American Totalisator Co.*, 101 LRRM 1403 (1979).

There are comparatively few reported cases in which jurisdiction over a § 301 action has been challenged on the ground that the employer is not in commerce, and only one found by this Court or the parties that involved an employer in the racing industry. Some courts have equated their jurisdiction, often implicitly only, over a § 301 action with that of the NLRB. *Hiatt v. Schlecht*, 400 F.2d 875, 876 (9th Cir. 1968) (citing cases involving NLRB jurisdiction for proposition that many authorities require direct purchase of out-of-state materials in comparatively substantial quantities to find jurisdiction); *Local Joint Exec. Bd., Hotel & Restaurant Employees & Bartenders Int'l Union v. Joden, Inc.*, 262 F.Supp. 390, 394–95 (D.Mass.1966) (semble); *Prospect Dairy, Inc. v. Dellwood Dairy Co.*, 237 F.Supp. 176, 1979 (N.D.N.Y.1964) (semble, applying de minimis doctrine); *Local 384, Int'l Bhd. of Teamsters v. Patane*, 232 F.Supp. 740, 742 (E.D.Pa.1964) (relying on NLRB decisions because of Congressional ratification of its policy); *Taft, Ingalls & Co. v. Truck Drivers, Chauffeurs & Helpers Local U. No. 100*, 202 F.Supp. 317, 318 (S.D. Ohio 1962) (relying on NLRB jurisdiction cases for proposition that jurisdiction only attaches where dispute threatened interstate commerce in substantial manner). No particular conclusion can be drawn from the cited cases, since the issue presented here was not involved. With one exception, the courts apparently simply relied on cases involving NLRB jurisdiction for general propositions concerning the reach of the LMRA.

The *Patane* court thought that Congress' use of the same "affecting commerce" language for courts' jurisdiction in the 1947 statute as had appeared in the National Labor Relations Act indicated congressional ratification of the prior NLRB policy. This argument is not persuasive. Drawing conclusions from Congress' failure to change language is risky. In addition, congressional approval of the policy of the NLRB does not necessarily indicate an intention to restrict the scope of the courts' jurisdiction under the statute, as the language and circumstances of the 1959 enactment of § 164(c)(1) indicate.

At least one court has simply decided the "affecting commerce" issue in a § 301 case without mentioning the NLRB or citing cases involving NLRB jurisdiction. *Kracoff v. Retail Clerks Local U. No. 1357*, 244 F.Supp. 38, 42 (E.D.Pa.1965). No conclusions concerning the reason for doing so can be drawn from the brief discussion of the jurisdictional issue.

The single case found on point is *Independent Ass'n of Pari-Mutuel Employees v. Gulfstream Park Racing Ass'n*, 407 F.Supp. 855 (S.D.Fla.1976), an action to compel arbitration. The district court "yield[ed] to the expertise of the Board in agreeing that horse racing is an industry of essential local concern." *Id.* at 857. Although it recognized the NLRB's discretion to decline jurisdiction, the Court thought that if it were to make an independent determination as to jurisdiction over the particular track, it "would only be forced to consider those same factors which led to the Board's conclusion that the racing tracks do not affect commerce," *id.* at 856–57. Although *Gulfstream Park* is the only reported case on point, it is not controlling, and I do not find its reasoning persuasive.

Equating a court's jurisdiction with the permissible outer limits of NLRB jurisdiction is justified since the outer limits of the agency's jurisdiction and of the court's jurisdiction coincide. Equating a court's jurisdiction with the permissible discretionary exercise of NLRB jurisdiction is not justified under the statute. This is not an instance of a court's deferring to an agency's interpretation of an imprecisely defined statute. The NLRB is specifically empowered to exercise less than its authorized jurisdiction; this Court is not.

The LMRA set up two primary mechanisms for promoting the goal of industrial stability, *see* 29 U.S.C. § 141(b), private enforcement of collective bargaining agreements through § 301 and government sanctions for unfair labor practices through the NLRB. The potential reach of both mecha-

**422**

nisms is the same, and a lack of actual congruence of the two is not at odds with the purpose of the Act. The nature of the two primary mechanisms permits such a result, and the legislative history indicates that the two mechanisms were intended to be independent.

As Congress reiterated in 1959, when the act was amended, the NLRB may legitimately take into account its limited resources and overall goals in exercising its jurisdiction. Provided the minimum requirement of the statute is met, this Court may not similarly inquire whether granting or denying the private enforcement mechanism in a particular case best promotes the goals of the statute. The NLRB may adopt a general rule or standard, based on the overall effect of an entire industry upon commerce, without weighing the facts of each case. *See NLRB v. Cross,* 346 F.2d 165, 167 (4th Cir. 1965). Where a judicial enforcement mechanism is independent of the agency's determination, as § 301 is, a court must necessarily make a particularized determination in each case. *Cf., e.g., NLRB v. Cross,* 346 F.2d 165 (4th Cir. 1965) (court makes no independent determination in NLRB enforcement proceeding).

Plaintiff has submitted a copy of the decision in *American Totalisator Co., Inc.,* Case Nos. 5–CA–12079, 5–CA–12090, in which the NLRB declined to exercise jurisdiction over Amtote. The findings of fact made by the ALJ, upon which plaintiff relies, clearly establish that Amtote is engaged in interstate commerce within the meaning of § 301. Amtote, a Delaware corporation, is a subsidiary of General Instrument Corporation. Amtote has its headquarters and manufacturing plant in Maryland, with facilities in New England and California. Amtote assembles, services and repairs "tote boards" used at racetracks in 31 states, Puerto Rico, and four foreign countries. It purchased goods and services from out-of-state vendors totaling $13,500,-000 in 1979 and $8,900,000 for the first ten months in 1980; gross revenue from goods and services sold to customers outside Maryland exceeded $30,000,000 in 1980.

Amtote has shop employees, working primarily in Towson, and field employees throughout the country. Field employees, and occasionally shop employees, maintain and repair and operate some Amtote equipment at racetracks; employees move from track to track, frequently across state lines.

Defendant's motion to dismiss for lack of subject matter jurisdiction must be denied.