**LOUISIANA–PACIFIC CORPORATION,**
**Petitioner–Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD,**
**Respondent–Cross–Petitioner.**

Nos. 87–7320, 87–7341.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 11, 1988.

Decided Oct. 3, 1988.

Jonathan D. Rosenfeld, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for petitioner-cross-respondent.

Paul J. Spielberg, N.L.R.B., Washington, D.C., for respondent-cross-petitioner.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for Millmens Union, Local 1495, intervenors.

Before TANG, SCHROEDER and NELSON, Circuit Judges.

TANG, Circuit Judge:

Louisiana–Pacific (Company) petitions for review and the Board cross-applies for enforcement of the NLRB's bargaining order. The Board's order held that the Company violated sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with Millmen's Local No. 1495 (Union) after the Company acquired a new plant and by conducting a poll to ascertain Union support. We deny the petition and grant enforcement of the Board's order.

## BACKGROUND

On March 12, 1984 Louisiana–Pacific (Company) purchased the assets of Diamond International Corporation. At that time, Millmen's Local No. 1495 (the Union) had been the representative of Diamond's employees since 1937, and Diamond and the Union were parties to a collective-bargaining agreement due to expire in July 1985. Diamond's employees were laid off. At the time of the sale, Louisiana–Pacific's plant manager Peruman began interviewing candidates for employment, including a number of former Diamond employees. During the course of these interviews several applicants, who were former Diamond employees, made unsolicited negative comments about unions in general and Millmen's Local No. 1495 in particular.

The record shows that approximately fifteen former Diamond employees had made unsolicited declarations to Company officials regarding their dissatisfaction with the Union or union representation. Of these fifteen employees, six stated in employment interviews that they no longer wished to be working in a union shop because unions discriminated against good employees, and six stated in employment interviews that they did not wish to be represented by the Union. Additionally, two employees, including Sanders, a former union shop steward, expressed the hope to Supervisor Reidenhauer that the employees would not get the Union back, and one employee, Charles Harker, a former member of the Union's negotiating committee, expressed the view to Reidenhauer that a majority of employees, including himself, did not want the Union.

As of April 16, the Company had hired 83 unit employees, 78 of whom were former Diamond employees. On April 17, the Union's president Holm informed the Company by letter that the Union represented a majority of its employees, that this majority consisted of former Diamond employees, and that, as a successor to Diamond, the Company was obligated to bargain with the Union. The letter also requested that the Company contact Holm to arrange a meeting for the purpose of collective bargaining. On April 23, the Company's personnel manager agreed to meet with Holm and other Union officials to discuss the Union's position, but not to negotiate. This conversation was confirmed by letter from the Company to the Union dated April 25. At the meeting held April 27, the Company expressed doubt regarding the Union's claim that it represented a majority of the Company's employees. Holm again asserted the Union's claim as to its majority status and requested bargaining. The Company then proposed an expedited elec-

tion on this matter, but did not accede to the demand for bargaining.

Following the Union's request for bargaining on April 17, the Company continued to receive reports of employee dissatisfaction with the Union, from both employees and supervisors. On July 20, the Company held a poll for the purpose of determining employee support for the Union. The results of the poll showed 21 votes for, and 75 votes against, continued Union representation.

The Union filed an unfair labor practice charge on June 20, 1984, prior to the Company's poll, and the NLRB issued its complaint on August 30, 1984. The Administrative Law Judge (ALJ) found that the Company's refusal to recognize and bargain with the Union was justified on the basis that the Company had relied on evidence sufficient to establish a reasonably based doubt of the Union's majority status as of April 17, 1984. The ALJ also found that the July 20, 1984 poll of employees was not unlawful as it was untainted by unfair labor practices and similarly was based on objective factors which placed the Union's majority status in doubt. The Board found there was no reasonably based doubt of the Union's majority status on April 17 and thus that the Company's refusal to bargain and its conducting a poll on July 20 were unfair labor practices.

Louisiana–Pacific petitions for review of the order and the Board cross-applies for enforcement.

## ANALYSIS

Decisions of the NLRB will be upheld if the Board correctly applied the law and if its factual findings are supported by substantial evidence on the record as a whole. *NLRB v. Island Film Processing Co., Inc.,* 784 F.2d 1446, 1450 (9th Cir.1986).

When an employer with an established bargaining relationship is replaced by a "successor" employer within the meaning of the NLRA, the incumbent union continues to enjoy the presumption of majority support and the new employer is obligated to recognize and bargain with it upon request. *Fall River Dyeing & Finishing*

*Corp. v. NLRB,* 482 U.S. 27, 107 S.Ct. 2225, 2233–34, 96 L.Ed.2d 22 (1987). The presumption of majority support can be rebutted only with "clear, cogent, and convincing evidence, that the union was in the minority or that the employer had a good faith reasonable doubt of majority support." *NLRB v. Tahoe Nugget, Inc.,* 584 F.2d 293, 297 (9th Cir.1978) (footnote omitted), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979). The evidence establishing good faith doubt "must unequivocally indicate that union support [has] declined to a minority." *NLRB v. Silver Spur Casino,* 623 F.2d 571, 579 (9th Cir.1980), *cert. denied,* 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981).

Louisiana–Pacific concedes that under these standards its refusal to bargain on April 17 was an unfair labor practice because it did not have clear evidence supporting a reasonable doubt of majority support at that time.

■ Louisiana–Pacific's primary argument is that evidence of employee disaffection subsequent to April 17 can be used to justify the later poll of the employees. The Company argues that the Board did not correctly apply the law because it did not analyze the causal connection between the April 17 withdrawal of recognition and the later evidence of employee disaffection. We disagree.

The Board found that the unlawful refusal to bargain on April 17 undermined any objective basis that the Company might otherwise have had to conduct the July 20 poll of its employees. In so finding the Board adhered to well established legal standards. "[T]he Board many times has expressed the view that the unlawful refusal of an employer to bargain collectively with its employees' chosen representatives disrupts the employees' morale, deters their organizational activities, and discourages their membership in unions." *Franks Bros. Co. v. NLRB,* 321 U.S. 702, 704, 64 S.Ct. 817, 818, 88 L.Ed. 1020 (1944). In *Franks Bros.* the Supreme Court enforced a bargaining order even though the union no longer enjoyed majority support at the

time the Board imposed its remedy because it is within the Board's discretion and expertise to fashion remedies for unfair labor practices. *Id.*

Louisiana–Pacific argues that the Board has departed from its own rule, endorsed by this court, that there must be a causal connection between a prior unfair labor practice and a subsequent withdrawal of recognition. *See, e.g., Hotel, Motel & Restaurant Employees Local No. 19 v. NLRB,* 785 F.2d 796 (9th Cir.1986), *aff'g Burger Pits, Inc.,* 273 N.L.R.B. 1001 (1984); *NLRB v. Nu–Southern Dyeing & Finishing, Inc.,* 444 F.2d 11 (4th Cir.1971); *Master Slack Corp.,* 271 N.L.R.B. 78 (1984); *Guerdon Industries, Inc.,* 218 N.L.R.B. 658 (1975); *Deblin Mfg. Corp.,* 208 N.L.R.B. 392 (1974). These cases do not focus exclusively upon causation, as the Company contends. The Board has consistently indicated that prior unfair labor practices do not automatically render a withdrawal of recognition illegal; rather the Board considers the seriousness of the violations and the totality of the circumstances. *Guerdon,* 218 N.L.R.B. at 661. The Board said in *Guerdon* that prior ULPs would not taint the subsequent withdrawal if they "were not of such a character as to either affect the Union's status, cause employee disaffection, or improperly affect the bargaining relationship itself." *Id.* In *Guerdon* the employer had unilaterally announced and implemented an incentive wage plan without notice to the Union, *id.* at 660, and the Board found the violation was the type which would improperly affect the bargaining relationship because it "portrayed to the employees that [the] Respondent was in a position to confer or withdraw economic benefits without regard to the presence of the Union," *id.* at 661–62.

The cases the Company cites do not involve the unfair labor practice charged here, i.e., the refusal to bargain. In this case the Board found that repudiation of the bargaining obligation is such a serious unfair labor practice that it undermined any objective basis for the Company's subsequent poll of its employees. We certainly cannot say that this finding had no rea-sonable basis in law. *See Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979).

The Board found that the July 20 poll was an unfair labor practice, violative of section 8(a)(1). Polling employees to determine their sentiments about an incumbent union is permitted if the employer has "substantial, objective evidence of a loss of union support, even if that evidence is insufficient by itself to justify withdrawal of recognition." *Mingtree Restaurant, Inc. v. NLRB,* 736 F.2d 1295, 1299 (9th Cir. 1984). We agree with the Board's finding that there was not sufficient objective evidence of loss of union support to satisfy the *Mingtree* standard, especially in light of the related finding that the Company's unlawful refusal to bargain on April 17 undermined any objective basis it otherwise might have had to conduct the July 20 poll.

The Company's petition for review is DENIED and the Board's order is ENFORCED.