**EXXEL/ATMOS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 93–1108.**

United States Court of Appeals, District of Columbia Circuit.

Nov. 4, 1994.

Before: EDWARDS, Chief Judge, WALD, SILBERMAN, BUCKLEY, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, and TATEL, Circuit Judges.

On Respondent's Suggestion
for Rehearing *En Banc*

ORDER

PER CURIAM.

Respondent's Suggestion for Rehearing *En Banc* and the Response thereto have been circulated to the full Court. The taking of a vote was requested. Thereafter, a majority of the judges of the Court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing, it is

**ORDERED,** by the Court *en banc,* that the suggestion is denied.

Chief Judge EDWARDS and Circuit Judge SILBERMAN would grant the suggestion.

A dissenting statement filed by Circuit Judge SILBERMAN is attached.

SILBERMAN, Circuit Judge, dissenting from the denial of rehearing *en banc*:

Ordinarily I would not vote to vacate an opinion of this court and to set the case for *en banc* argument if the opinion merely remanded to the agency for an adequate explanation. I have noted, however, that such an order should be limited to situations where the court is genuinely uncertain as to the agency's legal/policy course. *See United States Office of Personnel Management v. FLRA,* 905 F.2d 430, 437 (D.C.Cir.1990) (Silberman, J., concurring) ("[W]e must take care not to cajole agencies, through remand for inadequate explanations, into adopting legislative interpretations we lack authority to require."). In this situation we are not uncertain; the court quite obviously just disagrees with the Board's policy. By repeatedly, if episodically, refusing to enforce Board bargaining orders, unless and until the Board articulates limits on those orders that the court believes desirable, the court has

exceeded—rather dramatically in my view— the legitimate scope of judicial review. *Compare, e.g., Sullivan Indus. v. NLRB,* 957 F.2d 890, 904–05 (D.C.Cir.1992) *and Williams Enters., Inc. v. NLRB,* 956 F.2d 1226, 1235 (D.C.Cir.1992) *with NLRB v. Creative Food Design Ltd.,* 852 F.2d 1295, 1299 (D.C.Cir.1988). And since under the National Labor Relations Act employers throughout the country may petition for review in the D.C. Circuit, the court's posture absolutely prevents the Board from pursuing its policy even though our sister circuits are more deferential. *See, e.g., Louisiana–Pacific Corp. v. NLRB,* 858 F.2d 576, 578–79 (9th Cir.1988); *NLRB v. Hollaender Mfg. Co.,* 942 F.2d 321, 327–28 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992).

The Board's position is rather straightforward. If an employer violates § 8(a)(5) of the Act by illegally refusing to bargain with a union that the employer has previously formally recognized as the representative of a majority of its employees, the employer will be ordered to bargain with the union. Such a bargaining order obliges the employer to bargain in good faith for a reasonable period of time.

> For over 50 years, an affirmative bargaining order has been the standard Board remedy for an employer's unlawful refusal to bargain with a union which, as of the date of the refusal, enjoys the status of a 9(a) collective-bargaining representative. See, e.g., *Inland Steel Co.,* 9 NLRB 783, 814–816 (1938). This remedy is warranted even if the union has lost its majority support after the unfair labor practice and even though the order will operate to preclude, for a reasonable period, an election to test majority status. In such cases, the Board's paramount concerns are to restore to the union the bargaining opportunity which it should have had in the absence of unlawful conduct and to prevent the possibility that the wrongdoing employer would ultimately escape its bargaining obligation as the result of the predictably adverse effects of its unlawful conduct on employee support for the union.

*Williams Enters., Inc.,* 312 N.L.R.B. 937, 940, 1993 WL 402910 (1993).

Going back to *Peoples Gas Sys., Inc. v. NLRB,* 629 F.2d 35 (1980), this court has been uncomfortable with such orders because it has thought that employees should have an early opportunity (presumably, earlier than what the Board might *ex post* conclude was a reasonable period of time) to initiate a decertification election, or that an employer should be able readily to force the union to petition for an election to reaffirm its majority status. I have explained in my dissenting opinion in *Sullivan Indus. v. NLRB,* 957 F.2d 890, 906 (D.C.Cir.1992) (Silberman, J., concurring in part and dissenting in part), that *Peoples Gas* misread *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), a Supreme Court decision which deals only with the propriety of bargaining orders employed in the unusual situation where a union has *not* been recognized. The court, I am afraid, continues to labor under the misreading; *Peoples Gas* is once again relied upon in this case. The premise, accordingly, upon which in this case the court remands to the Board—that a bargaining order is an unusual remedy for an illegal refusal to bargain, even when an employer has previously recognized the union—is simply not correct.

The panel's opinion suggests a rationale upon which it is prepared to enforce the Board's order, but it is a rationale that would compel the Board—improperly in my view— to set a boundary on what is a reasonable period in this case and to forswear the use of a bargaining order in other cases not before the court. The court recognizes that the illegal refusal to bargain took place only eight months after the union was recognized. A union is normally entitled under Board precedent to an irrebuttable presumption of majority support during the first year after achieving representative status, and the court suggests that the order would be enforced in this case if the Board were to define a reasonable period of time to mean *only* four months. But when an employer illegally refuses to bargain during the first year after recognizing a union, the employer's unfair labor practice itself presumably contributes to eroding employee support for the union. If a Board order to bargain is

applicable only for a period that corresponds to the period remaining in the first year when the unfair labor practice was committed, an employer would thus still have an incentive to engage in illegal conduct.

The corollary to the court's position, which follows our line of cases since *Peoples Gas,* is that the Board may *not* issue an order requiring an employer to bargain with a union for a reasonable period of time (which also forecloses an employee decertification election during that period) if the illegal refusal to bargain takes place more than a year after the employer recognized the union. The Board, not surprisingly, refuses to accept the court's view of desirable policy. The Board may be unwilling to spell out *ex ante* what is a reasonable period of time in such situations because subsequent events may bear on the issue. The Board may also be concerned, however—not unlike Presidents faced with demands for time limits on the deployment of U.S. troops—that a specified period will provide an incentive to the employer to wait out the period rather than reach a possible agreement.

We have said repeatedly in the *Peoples Gas* line of cases that the Board has not, to our satisfaction, balanced the interests of employees who wish to be rid of their union (and employers who perhaps also wish to be free of the union) with the Board's desire to return a union back to the position it would have occupied but for the unfair labor practice. As I argued in *Sullivan,* however, an agency is entitled to enormous deference when it chooses the appropriate remedy to redress a violation of law. *See National Treasury Employees Union v. FLRA,* 910 F.2d 964, 966–67 (D.C.Cir.1990) (en banc); *see also Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 201–02, 111 S.Ct. 2215, 2222–23, 115 L.Ed.2d 177 (1991). For its part, the Board has taken the position that an order to bargain is the appropriate remedy for all § 8(a)(5) violations. If I were a Board member I might well be sympathetic to a somewhat different policy, but I do not believe that we have any judicial warrant to object to the Board's categorical approach or its refusal to spell out *ex ante* the temporal limits on a bargaining order.