**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EAST BAY AUTOMOTIVE COUNCIL
AND ITS AFFILIATED LOCAL UNIONS:
DISTRICT LODGE NO. 190; LOCAL
LODGE NO. 1546; INT'L.
ASSOCIATION OF MACHINISTS &
AEROSPACE WORKERS, AFL-CIO;
AUTO, MARINE & SPECIALTY
PAINTERS UNION, LOCAL NO. 1176;
TEAMSTERS AUTOMOTIVE EMPLOYEES
UNION, LOC. 78; INT'L.
BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN &
HELPERS OF AMERICA, AFL-CIO,
                          *Petitioner,*

M & M AUTOMOTIVE GROUP, INC.,
D/B/A BROADWAY VOLKSWAGEN,
                          *Intervenor,*

v.

NATIONAL LABOR RELATIONS
BOARD,
                          *Respondent.*

No. 04-74997

NLRB No.
32-CA-17424

NATIONAL LABOR RELATIONS
BOARD,
                          *Petitioner,*

v.

M & M AUTOMOTIVE GROUP, INC.,
D/B/A BROADWAY VOLKSWAGEN,
                          *Respondent.*

No. 04-75871

NLRB No.
32-CA-17424

4291

M & M AUTOMOTIVE GROUP, INC.,
D/B/A BROADWAY VOLKSWAGEN,
                    *Petitioner,*

EAST BAY AUTOMOTIVE MACHINISTS
UNION LODGE 1546,
                    *Intervenor,*

                v.

NATIONAL LABOR RELATIONS
BOARD,
                    *Respondent.*

No. 05-71144

NLRB No.
32-CA-17424

OPINION

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted
October 17, 2006—San Francisco, California

Filed April 16, 2007

Before: Robert R. Beezer, Diarmuid F. O'Scannlain, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

Robert G. Hulteng, San Francisco, California, argued the case and was on the briefs for petitioner-intervenor M&M Automotive Group, Inc.; Denise C. Barton and Michael G. Pedhirney, Littler Mendelson, P.C., were also on the briefs.

David A. Rosenfeld, Alameda, California, argued the case and was on the briefs for petitioner-intervenor East Bay Automotive Council, et al.; Caren P. Sencer, Weinberg, Roger & Rosenfeld, was also on the briefs.

David A. Fleischer, Washington, D.C., argued the case and was on the brief for petitioner-respondent National Labor Relations Board; Arthur F. Rosenfeld, John E. Higgins Junior, Aileen Armstrong, and Meredith L. Jason, National Labor Relations Board, were also on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether to enforce an affirmative bargaining order issued by the National Labor Relations Board after nearly eight years of litigation involving an automotive dealer and a union in Oakland, California.

I

East Bay Automotive Council and its affiliated local unions ("the Union"), and M&M Automotive Group, Inc., d/b/a Broadway Volkswagen ("the Employer"), appeal the National Labor Relations Board's ("the Board") decision to issue an affirmative bargaining order pursuant to a labor dispute between the Union and the Employer. The Board seeks enforcement of its order.

The Employer is an automotive dealer in Oakland, California. On December 15, 1997, the Union was certified as the exclusive collective bargaining representative of approximately 16 service and parts department employees at the dealer. On January 20, 1998, the parties began collective bargaining for their first contract. During the year 1998, the parties met on approximately 12 occasions. The Union was represented at the bargaining table by business representatives Don Crosatto, Craig Andrews, Ron Paredes, and by employee representatives Tim Finnerty and Gunnar Peterson. The Employer was represented by its owners, Mike Murphy and Bill Martin. The final meeting between the parties was November 19, 1998. By that time, Martin had died, and Murphy attended the session alone.

At the conclusion of the negotiations, the parties had come to tentative agreements but had not reached a contract. During the negotiations, the Employer unilaterally and without informing the Union gave wage increases and promotions to

a number of employees. The parties stipulate that wage increases to Damien Ferrara, Charlie O'Neal, Pedro Ramos, Jason Espinal and Donny Gouvaia were granted without notifying the Union verbally or in writing of any intention to grant such increase. Although the Employer contends there was at least imperfect communication to the Union as to the wage increase granted to Fernando Arcos, the Board found that there had been no notice of intent to grant the increase given to the Union by the Employer in Arcos's case. In all, the Employer granted six employees unilateral wage increases neither authorized by contract nor produced through negotiation with the Union.

There is no evidence in the record that the Employer took any formal step to inform the Union of the wage changes either before or after they were made. One employee, Charlie O'Neal, did testify that he informed Tim Finnerty of his pay raise within a few days of receiving it. There is no evidence that O'Neal informed Finnerty either of the circumstances surrounding his raise or of his promotion.

During this same time period five of the six employees named above received new job titles in addition to raises. Specifically, Ferrara's job title was changed from "gofer" to "apprentice detailer"; O'Neal's job title was changed from "back counter" to "assistant parts manager"; Ramos's job title was changed from "detailer" to "head detailer"; Arcos's job title was changed from "installer" to "apprentice technician"; and Gouvaia's job title was changed from "parts driver" to "parts counter apprentice." There is no evidence in the record that the Union knew of any of these job title changes. The Employer concedes that "[a]t no time before, during, or after bargaining did the Employer use formal classifications or job titles."

On February 4, 1999, the Employer received a petition signed by 11 of the 16 unit employees stating that they no longer wanted to be represented by the Union. Among the sign-

ers were Ferrara, O'Neal, Gouvaia, Arcos, and Ramos. On February 9, the Employer's counsel sent a letter to the Union stating that the Employer had received objective evidence that a majority of the unit employees no longer wished to be represented by the Union. The letter went on to state that the Employer therefore had good faith doubt that the Union still represented the unit employees, and that the Employer was withdrawing recognition from the Union and would not undertake further bargaining with it. On May 29, 1999, the Union made a request for information connected with the bargaining, such as a list of current employees and their rates of pay. The Employer declined to furnish any of the requested information, as it contended that it had lawfully withdrawn recognition from the Union.

On May 6, 1999, the Union filed charges of unfair labor practices with the Board, prompting the General Counsel of the Board to issue a complaint alleging that the Employer had violated section 8(a)(5) and (1) of the National Labor Relations Act ("the Act"), 29 U.S.C. §§ 151-59. After a hearing, the ALJ found that the Employer had violated sections 8(a)(5) and (1) by unilaterally promoting one employee, Gouvaia, and granting him a wage increase. The ALJ found that allegations of similar unlawful conduct with respect to Ferrara, O'Neal, Arcos and Ramos were time-barred by section 10(b) of the Act, 29 U.S.C. § 160(b), because the Union knew or should have known of such conduct more than six months before it filed the charge. The ALJ attributed such knowledge or constructive knowledge to the Union on the basis of O'Neal's informing Finnerty of his own wage increase. The ALJ also found that the Employer had lawfully granted a wage increase to Espinal. Finally, the ALJ concluded that the single violation found did not taint the anti-union petition signed by a majority of the unit employees, and that the Employer had therefore lawfully withdrawn recognition from the Union, and was not required to furnish it with the requested information, on the basis of the petition.

After the General Counsel and the Union filed exceptions, a three-member panel of the Board found that the record did not support the ALJ's finding that the Union knew or should have known of the raises and promotions more than six months before it filed its complaint. Accordingly, the Board found that the allegations were not barred by section 10(b), and that the Employer violated section 8(a)(5) and (1) of the Act by such conduct. The Board further found that these violations tainted the employee petition and that the Employer therefore violated section 8(a)(5) and (1) of the Act by relying upon the tainted petition to withdraw recognition from the Union and to refuse to furnish relevant information to the Union. On September 24, 2004, the Board ordered the Employer to cease and desist from the unlawful conduct and to take affirmative action, including bargaining with the Union, to remedy its unfair labor practices.

## II

Both the Union and the Employer filed petitions for review from the Board's order. The Union brings its appeal on two grounds. First, it argues that the Board made insufficient findings with respect to certain employees. Second, it argues that the Board ought to have ruled that the only legitimate means for withdrawing recognition is a Board-certified election. We address each in turn.

## A

The Union contends that the Board's decision and order were erroneous insofar as the Board declined to make findings concerning the legality of the job reclassifications as well as of the legality of the wage increases granted to Espinal and O'Neal. The Board concluded that such findings were not necessary to its decision and order, and would merely have been cumulative.

[1] The Board's power to fashion remedies is "a broad discretionary one, subject to limited judicial review." *Fibreboard*

*Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964) ("The Board's order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act") (internal quotation marks and citations omitted). The Union contends that further findings would have enabled the Board to expand the scope of its order, or in the alternative that the rationale for the Board's decision would be bolstered by further findings. The Union makes no argument to suggest that the Board was attempting to achieve ends other than those envisioned by the Act.

**[2]** We are satisfied that the Board did not err in declining to make findings with respect to particular employees. It had a rational basis for so declining, having concluded that further findings would be cumulative and would not alter its remedial order. *See Chamber of Commerce v. NLRB*, 574 F.2d 457, 463 (9th Cir. 1978). Given the Board's broad discretionary authority in fashioning remedies, the Union has not shown the requisite deviation from the Act's purposes that would permit this court to disturb the Board's order with respect to Espinal and O'Neal.

B

**[3]** The Union's contention that a Board-certified election is the only method by which an employer can withdraw recognition from a union is without merit. Indeed, the Union's reply brief itself avers that this issue need not be reached to decide the case before us. Moreover, the Union can cite no decision of the Board or of any court supporting its contention. Rather, its reply brief directs us to a case suggesting only that Board-conducted elections are the "preferred" method for selecting union representation. *See NLRB v. Peninsula Ass'n for Retarded Children & Adults*, 627 F.2d 202, 204-05 (9th Cir. 1980); *cf. Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 361 (1998) ("Under longstanding precedent of the [Board], an employer who believes that an incumbent

union no longer enjoys the support of a majority of its employees has three options: to request a formal, Board-supervised election, to withdraw recognition from the union and refuse to bargain, or to conduct an internal poll of employee support for the union."); *Levitz Furniture Co.*, 333 N.L.R.B. 717, 725-26 (2001).

**[4]** Accordingly, because a Board-certified election is not the only legitimate method for withdrawing recognition from a Union, it was not error for the Board to decline to require one here.

### III

The Employer raises three arguments in its challenge to the Board's order. First, it contends that the Board's reversal of the ALJ's determination that most of the allegations here were time-barred because of the Union's actual or constructive knowledge was not supported by substantial evidence. Second, the Employer contends that the Board erred in finding a causal relationship between its unilateral actions and the employees' subsequent expression of dissatisfaction with the Union. Third, the Employer argues that the Board abused its discretion by issuing an affirmative bargaining order, in light of the lengthy period of time between the filing of the Union's complaint and the Board's decision and of the allegedly insufficient gravity of the violations found.

### A

We "will uphold a decision by the Board if its findings of fact are supported by substantial evidence and if it correctly applied the law." *Lucas v. NLRB*, 333 F.3d 927, 931(9th Cir. 2003). We defer to the Board's interpretation and application of the Act, as long as the Board's interpretation is "reasonable and not precluded by Supreme Court precedent." *NLRB v. Advanced Stretchforming Int'l, Inc.*, 233 F.3d 1176, 1180 (9th Cir. 2000).

**[5]** The Employer urges upon us a "heightened scrutiny" beyond the substantial evidence standard on the grounds that here the Board's findings overturned those of the ALJ, but this approach is not supported by the cases on which it relies. *See Penasquitos Village*, 565 F.2d 1074, 1076 (9th Cir. 1977) (recognizing that "[t]he substantial evidence standard is not modified in any way when the Board and its examiner disagree") (internal quotation marks and citation omitted). We review the Board's findings as to the actual or constructive knowledge of the Union, therefore, under the usual substantial evidence standard, notwithstanding its having disagreed with the ALJ's initial determination.

**[6]** The record shows that only one employee shared knowledge of his wage increase with any other employee. Further, the Board's finding that the promotions were not "open and obvious" is supported by the Employer's admission that formal job titles and classifications were not used consistently in the workplace. The record might support inferences other than those drawn by the Board, but under our deferential standard of review that would not be sufficient to reverse the Board's decision. Substantial evidence supports the Board's judgment that the Union did not have actual or constructive knowledge of the unilateral promotions and wage increases extended to the employees as to whom the Board made findings.

B

**[7]** The Employer further argues that the Board erred by finding that the Employer's unilateral granting of pay increases and promotions was causally connected to the employees' expression of disenchantment with the Union. We disagree. The Board properly considered four factors in determining that the unfair labor practices had tainted the signatures on the employee petition expressing dissatisfaction with the union: (1) the length of time between the unfair practices and the withdrawal of recognition; (2) the nature of the viola-

tions, including the possibility for a detrimental or lasting effect on employees; (3) the tendency of the violation to cause employee disaffection; and (4) the effect of the unlawful conduct on employees' morale, organizational activities, and membership in the union. *Master Slack Corp.*, 271 N.L.R.B. 78, 84 (1984).

**[8]** Considering the lapse of time, the last unilateral change occurred only *one* month before the petition—a proximity that increases the likelihood of causation. Further, the affected employees here included a majority of the petition's signatories. *See AT Sys. W., Inc.*, 341 N.L.R.B. 57 (2004). As to the remaining factors, both logic and precedent dictate that unilateral action with respect to wages is likely to have a long-lasting effect on employee support for a union because each paycheck reminds them of the likely irrelevance of the union. *Penn Tank Lines, Inc.*, 336 N.L.R.B. 1066, 1067 (2001) ("Where unlawful employer conduct shows employees that their union is irrelevant in preserving or increasing their wages, the possibility of a detrimental or long-lasting effect on employee support for the union is clear."); *see also May Dept. Stores Co. v. NLRB*, 326 U.S. 376, 385 (1945) ("Such unilateral action minimizes the influence of organized bargaining. It interferes with the right of self-organization by emphasizing to the employees that there is no necessity for a collective bargaining agent.").

## C

Finally, the Employer challenges the bargaining order as an extreme remedy that is unjustified in this case because employees would be denied their freedom of choice in organizing and because the violations found here are not sufficiently serious to warrant such relief. Additionally, the Employer relies heavily on the argument that the Board's own delay in resolving this case forecloses the option of imposing an affirmative bargaining order.

**[9]** We have recognized that affirmative bargaining orders are an appropriate remedy even where it has been shown that a union has lost majority support among employees. *La.-Pac. Corp. v. NLRB*, 858 F.2d 576, 578 (9th Cir. 1988) ; *NLRB v. Geigy Co.*, 211 F.2d 553, 558 (9th Cir. 1954). Further, it would be inappropriate to upset the Board's order in light of a loss of employee support that was brought about by the very wrongs being remedied. And while the Board's delay of several years in issuing the panel's decision was indeed deplorable, in our court changed circumstances during intervals of adjudication "have been held irrelevant to the adjudication of enforcement proceedings." *NLRB v. Bakers of Paris, Inc.*, 929 F.2d 1427, 1448 (9th Cir. 1991) (citing *NLRB v. Buckley Broad. Corp.*, 891 F.2d 230, 234-35 (9th Cir. 1989)); *see also Seattle-First Nat'l Bank v. NLRB,* 892 F.2d 792, 795 (9th Cir. 1989); *L'Eggs Prods., Inc. v. NLRB*, 619 F.2d 1337, 1352-53 (9th Cir. 1980).

**[10]** Accordingly, we conclude that the Board did not abuse its broad remedial discretion in issuing an affirmative bargaining order. *See Sever v. NLRB*, 231 F.3d 1156, 1165 (9th Cir. 2000).

IV

For the foregoing reasons, we reject both the Union's and the Employer's arguments that the Board's remedy in this case is either inadequate or inappropriate. Therefore, the petitions for review are **DENIED** and the Board's petition is **GRANTED** and the Board's Order shall be **ENFORCED.**