NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

WESTERN DRUG, Respondent.

No. 77–3739.

United States Court of Appeals, Ninth Circuit.

July 18, 1979.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., Christopher Katzenbach, Atty., N.L.R.B., Washington, D. C. (argued), for petitioner.

Howard C. Burton, Burton, Coder & Waite, Great Falls, Mont., Leslie S. Waite, III, Waite, Cruikshank & Schuster, Great Falls, Mont. (argued), for respondent.

Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

During 1974 and 1975 the Retail Clerks Union (the Union) attempted to organize one drug store in a seven-store chain in Montana. Considerable litigation has ensued. The Board's decision is reported at 231 N.L.R.B. No. 86.

This petition under § 10(e) of the Labor Management Relations Act, 29 U.S.C. § 160(e), seeks enforcement of an NLRB bargaining order against Western Drug.

■ Substantial evidence on the record as a whole supports the findings of the NLRB that Western violated §§ 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3), by docking wages, reducing working hours, and requiring two employees to take compensatory time off, all by reason of the employees' union activities, and by responding to those activities with interrogations, threats, solicitation of grievances, and promises of benefits.

A more difficult problem is presented by the Board's remedial order which requires Western to bargain with the Union. Under *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 614, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Board may enter a bargaining order if:

(1) the union once represented a majority of the unit employees,

(2) the employer has committed serious unfair labor practices, and

(3) "the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order."

The parties agree, and the record substantiates, that serious unfair labor practices were committed. Whether the Union once represented a majority of the unit employees is unclear,** but we do not reach that question, for it is clear to us that the third criterion has not been satisfied.

■ Although we afford the Board wide discretion in balancing the sometimes conflicting objectives furthered by the Act,

---

* The Honorable William J. Jameson, Senior United States Judge for the District of Montana, sitting by designation.

** The Board reversed the Administrative Law Judge's determination that the unit comprised five employees. The Board excluded two temporary employees, Rice and Wallila, both of whom did not sign authorizations. Rice was properly excluded, *see NLRB v. Adrian Belt Co.*, 578 F.2d 1304, 1308 (CA 9 1978), but the Board's exclusion of Wallila is questionable.

There are two tests for determining whether a temporary employee should be included in the unit, the reasonable expectation test and the date certain test. *NLRB v. New England Lithographic Co.*, 589 F.2d 29 (CA 1 1978) (endorses use of the date certain test). Inasmuch as we hold that issuance of a bargaining order was an abuse of discretion because a fair election could have been held, we do not decide which is the proper test.

*NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 304 (CA 9 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979), the above criteria limit that discretion. Under *Gissel* the Board must determine in each case that a bargaining order would best serve the interests of the affected employees. Here, the Board has mechanically applied the *Gissel* criteria without examining the present context. The Board's perfunctory conclusion that a bargaining order is proper has denied the present employees their freedom of choice without warrant. *Cf. Pacific Southwest Airlines v. NLRB*, 587 F.2d 1032 (CA 9 1978) (Board's *per se* approach to unit determination for plant clericals criticized); *NLRB v. Tri-Ex Tower Corp.*, 595 F.2d 1 (CA 9 1979) (inflexibility in timing of elections).

■ Although new employees are presumed to support the union in the same ratio as their predecessors and a bargaining order ordinarily will be enforced despite employee turnover,[1] elections are the preferred method for ascertaining employee sentiment.[2] Employee turnover, however, should be considered, when, as here, the employer's misconduct is serious but not outrageous.[3] Here each of the three unit employees resigned before the unfair labor practice charges were even heard and long before the Board reviewed the Administrative Law Judge's findings.[4]

■ This is not a situation where the offending party sought to benefit from the backlog facing the Board or the courts of appeal. Nor does the record indicate that Western's past practices would "continue to repress employee sentiment long after most, or even all, original participants have departed." *Bandag, Inc. v. NLRB*, 583 F.2d 765 (CA 5 1978). Accordingly, we find that an election untainted by the prior coercive practices could have been held.

We limit our holding to the facts presented.[5] The circumstances changed completely before the unfair practice charges were tried,[6] and there was no unusual delay in trying the charges.[7] All the employees in the unit voluntarily terminated their em-

---

1. *Compare NLRB v. Little Rock Downtowner, Inc.*, 414 F.2d 1084, 1091 (CA 8 1969), *with NLRB v. Pacific Southwest Airlines*, 550 F.2d 1148, 1153 (CA 9 1977).

2. *See, e.g., Brooks v. NLRB*, 348 U.S. 96, 104 & n. 18, 75 S.Ct. 176, 99 L.Ed. 125 (1954).

3. *NLRB v. American Cable Systems, Inc.*, 427 F.2d 446 (CA 5), *cert. denied*, 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970).

4. Because the ALJ found that the Union never had a card majority, he never considered whether a fair election could be held. When the Board reversed this finding, it then determined that a bargaining order was necessary without the benefit of a recommendation by the ALJ based on his findings regarding the possibility of holding a fair election.

5. We hold only that the Board must consider events occurring before the administrative hearing. At what point after the hearing, changed circumstances may be ignored by the Board is another question. *See generally NLRB v. Coca-Cola Bottling Co.*, 472 F.2d 140, 141 (CA 9 1972); Note, 31 *Stan.L.Rev.* 505 (1979).

6. Furthermore, some of the Employer's other contentions, though not accepted by this court, did raise substantial legal and factual issues.

7. *Compare NLRB v. L. B. Foster Co.*, 418 F.2d 1, 4 (CA 9 1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970):

   "It is possible that, as of now, there is not a single remaining employee who was concerned with the original election. Thus reliance is placed primarily upon facts occurring after the invalid election, and after the Board's decision.

   "We do not think that these facts permit us to refuse to enforce the Board's order. The delay is not the fault of the union; if it is anyone's fault, it is that of the employer. But regardless of fault, it is an unfortunate but inevitable result of the process of hearing, decision and review prescribed in the Act. And to deny enforcement, with or without remand for reconsideration on the basis of facts occurring after the Board's decision, is to put a premium upon continued litigation by the employer; it can hope that the resulting delay will produce a new set of facts, as to which the Board must then readjudicate."

   with *NLRB v. American Cable Systems, Inc.*, 427 F.2d at 448–49. *But cf. NLRB v. Washington Manor, Inc.*, 519 F.2d 750, 753 (CA 6 1975) (100% turnover did not support employer's refusal to bargain).

ployment for reasons unrelated to the unfair practices. And the Board's findings do not suggest any alternative ground for concluding that an election would not reflect the present employees' true wishes.

■ By ignoring the turnover in personnel, the Board denied the present employees the right to choose their bargaining representative. Because the primary objective of the Act is to guarantee employees this right, the Board must not routinely place a premium on deterring employer misconduct. *See Daisy's Originals, Inc. v. NLRB*, 468 F.2d 493, 503 (CA 5 1972). We share the Board's concern for maintaining industrial peace, but the order in this case violates the delicate balance between stability and freedom of choice implicit in the *Gissel* guidelines.

Enforced in part.