## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## CHATFIELD–ANDERSON CO., INC., dba Truss-Span Co., Respondent.

### No. 78–2504.

United States Court of Appeals, Ninth Circuit.

Oct. 11, 1979.

Deputy Associate General Counsel, N. L. R. B., Washington, D. C., on brief; Alan Banov, N. L. R. B., Washington, D. C., argued for petitioner.

Jerome L. Rubin, Mary Ellen Krug, Judith B. Stouder (argued), Schweppe, Doolittle, Krug, Tausend & Beezer, Seattle, Wash., on brief for respondent.

---

Before GOODWIN and KENNEDY, Circuit Judges, and MURRAY *, District Judge.

GOODWIN, Circuit Judge:

This case is before us on application of the National Labor Relations Board, under section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) (1976), for enforcement of its bargaining and related orders against Chatfield-Anderson Company. We enforce the part of the Board's order finding violations of section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), but deny enforcement of the bargaining order.

Chatfield operates wooden roof and floor truss manufacturing plants in Redmond and Auburn, Washington. The company's 34 employees began to discuss unionization in January 1976, while the Auburn plant was being constructed. Dan Heide, a construction employee at the Auburn facility, became a major proponent of union organization.

Largely as a result of Heide's efforts on February 19 and 20, 1976, 23 of the 34 employees signed authorization cards designating the Line Drivers, Pickup and Delivery, and Helpers Union as their representative to bargain collectively on their behalf.[1] When the company president was approached on February 20, he declined to recognize the union as the employees' bargaining representative, and the union petitioned the Board for an election.

Over the course of the next month, Chatfield—through its senior executives and supervisory personnel—pursued a course of conduct which included interrogating employees about their union activities and sympathies, threatening economic reprisals, including closing the plant, imposing stricter work rules, and withholding contemplated raises and bonuses. Management also promised economic benefits through retroactive raises after the union was out of the picture, threatened to prolong negotiations with the union while withholding raises and bonuses during the period of negotiations, and announced its establishment of an "open-door" policy to improve communications between employees and management.

The union lost the election held March 24 by a 14 to 7 vote, with 2 challenged ballots. Both sides filed unfair labor practice charges. The Board unanimously found, in agreement with the administrative law judge, that Chatfield had violated section 8(a)(1) of the Act by its activities during the election campaign. Concluding that the total effect of all the company's unfair practices destroyed the possibility of holding a fair second election within a reasonable period of time, the Board, relying upon *N.L.R.B. v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), ordered the company to recognize and bargain with the union.

Chatfield attempts to minimize the nature of its activities during the election campaign that gave rise to the findings of section 8(a)(1) violations. However, the Board's decision rests on findings of fact for which there is substantial evidence in the record. Accordingly, we affirm. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *N.L.R.B. v. Broadmoor Lumber Co.,* 578 F.2d 238, 240 (9th Cir. 1978).

Coercive interrogation about union activity violates section 8(a)(1). *N.L.R.B. v. Prineville Stud Co.,* 578 F.2d 1292, 1294 (9th Cir. 1978). Here, the questioning took place; the supervisors asking the questions gave no assurances against reprisals; and the company advanced no legitimate reason for the questioning. *See N.L.R.B. v. Super Toys, Inc.,* 458 F.2d 180, 182–83 (9th Cir. 1972).

Threats of adverse economic consequences resulting from unionization violate section 8(a)(1). *N.L.R.B. v. Randall P.*

* The Honorable Frank J. Murray, United States District Judge for the District of Massachusetts, sitting by designation.

1. Due to subsequent economic layoffs and additional solicitation of the remaining employees, as of March 1, 1976, 21 of the 24 employees then in the proposed bargaining unit had signed cards.

*Kane, Inc.,* 581 F.2d 215, 218 (9th Cir. 1978). Here, statements from various individuals in a position to present company policy to the employees indicated that unionization might result in plant closure, in layoffs of employees, in the loss or delay of planned raises and bonuses, and in harsher working conditions. Such threats are among the clearest forms of unfair labor practices. *See N.L.R.B. v. Randall P. Kane, Inc.,* 581 F.2d at 218; *N.L.R.B. v. Prineville Stud Co.,* 578 F.2d at 1295; *N.L.R.B. v. Four Winds Industries, Inc.,* 530 F.2d 75, 78–79 (9th Cir. 1976) (denying enforcement on other grounds). The company's representations were not legitimate opinions on the consequences of unionization which had some reasonable basis in fact, but were threats of retaliation, albeit somewhat veiled. *See N.L.R.B. v. Gissel Packing Co.,* 395 U.S. at 618, 89 S.Ct. 1918; *N.L.R.B. v. Lenkurt Electric Co.,* 438 F.2d 1102, 1106–07 (9th Cir. 1971).

■ Substantial evidence on the record as a whole supports the Board's findings that Chatfield engaged in conduct proscribed by section 8(a)(1). However, the threats were generally mild, and the coercive effect, if any, was not great. The company also issued disclaimers which tended to dissipate any coercive impact. Some statements were made by low-level supervisors. We have stated previously that "[s]uch statements are more likely to express individual views and less likely to influence an employee's decision than statements by high-level officials which bear the imprint of company policy." *Hecla Mining Co. v. N.L.R.B.,* 564 F.2d 309, 315 (9th Cir. 1977). On balance, however, because many of the statements were prompted by the company's executive officers and owners, we hold that the Board correctly ordered the election set aside because of the company's section 8(a)(1) violations.

■ However, we cannot approve the Board's bargaining order in this case. While we are mindful of the admonition that we accord great respect to the Board's selection of a remedy for unfair labor practices (*see N.L.R.B. v. Gissel Packing Co.,* 395 U.S. at 612 n.32, 89 S.Ct. 1918), we cannot ignore our own responsibility to be more than a mere "rubber stamp" for the Board's decisions. *See, e. g., N.L.R.B. v. Western Drug,* 600 F.2d 1324 (9th Cir. 1979).

In *Gissel,* the Court identified three categories of wrongful employer conduct: (1) "exceptional" cases marked by extreme and pervasive unfair labor practices, in which cases a bargaining order would clearly be warranted; (2) "less extraordinary cases marked by less pervasive practices" which nonetheless tend to undermine the union's majority strength and interfere with a fair election, in which cases a bargaining order is still warranted; and (3) "minor" cases marked by less extensive unfair labor practices which, because of their minimal effect on the entire election process, will not merit a bargaining order. 395 U.S. at 613–15, 89 S.Ct. 1918.

Although the Board characterized Chatfield's violations of section 8(a)(1) as "pervasive" and "sometimes flagrant", we do not read the Board's bargaining order as based on a conclusion that this is one of the "exceptional" cases described in *Gissel.* Although the Board's order does not set forth its supporting reasons with the desired detail (*see N.L.R.B. v. Pacific Southwest Airlines,* 550 F.2d 1148, 1151–52 (9th Cir. 1977)), we believe the Board's concern with the union's card majority status indicates that the Board believed this to be one of the "less extraordinary" cases nonetheless warranting a bargaining order. *Cf. N.L.R.B. v. Randall P. Kane, Inc.,* 581 F.2d at 219–20. In any event, we cannot agree that the case falls into either category in which a bargaining order is necessary to effectuate the purposes of the act.

A bargaining order based on authorization cards is less desirable than the free expression of employees in a fair election. *See N.L.R.B. v. Gissel Packing Co.,* 395 U.S. at 603, 89 S.Ct. 1918; *N.L.R.B. v. Pacific Southwest Airlines,* 550 F.2d at 1152–53. If the total effect of the unfair labor practices cannot be dispelled by the Board's usual remedies so that the fairness of a second

election is likely to be impaired, then the order may be justified. *N.L.R.B. v. Gissel Packing Co.*, 395 U.S. at 614–15, 89 S.Ct. 1918. *See Hambre Hombre Enterprises, Inc. v. N.L.R.B.*, 581 F.2d 204, 207 (9th Cir. 1978). The circumstances of this case do not lead to a conclusion that a fair election has been rendered unlikely.

Although Chatfield's unfair labor practices encompassed a variety of threats, promises, and otherwise unlawful conduct, they were hardly irreparable in the sense required to justify a bargaining order. As noted by the dissenting member of the Board, the effect of the more severe violations was mitigated before the election by the express disavowals of the company president. The almost trivial nature of other violations, while not rendering them *de minimis* or removing them from consideration in the decision to set aside the election, suggests that a fair election may be held under the safeguards normally employed by the Board in such cases.

The Board majority (Member Murphy dissenting) found that the company had violated sections 8(a)(5) and (1) of the Act by refusing to bargain with the union after a majority of the workers had signed the authorization cards and by instituting a new system of granting wage increases.

The Board's finding that Chatfield violated sections 8(a)(5) and (1) by refusing to accept the card majority is substantially moot. Chatfield's violations in respect to the election are sufficient to justify a new election and the remedial orders necessary to bring it about. To that extent the order will be enforced. The bargaining order will not be enforced.

Enforcement is granted in part and denied in part, and the case is remanded to the Board for the preparation of a judgment calling for a new election, and remedial orders to implement the election.

Remanded.