980 F.2d 738
 148 L.R.R.M. (BNA) 2320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NEW LIFE BAKERY, INC., Petitioner,
Glass, Molders, Pottery, Plastics & Allied Workers
International Union, Intervenor,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
Glass, Molders, Pottery, Plastics & Allied Workers
International Union, Intervenor
v.
NEW LIFE BAKERY, INC., Respondent.
 Nos. 91-70118, 91-70190.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 11, 1992.
Decided Dec. 3, 1992.
 
 MEMORANDUM*
 Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.
 
 
 1
 New Life Bakery, Inc. ("New Life") appeals from the National Labor Relations Board's ("Board") decision ordering collective bargaining with Glass Molders, Pottery, Plastic and Allied Workers International Union, Local No. 164-B, AFL-CIO ("the Union") to remedy violations of the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("the Act"). New Life seeks denial of enforcement on the following grounds: (1) the Union had not obtained a sufficient number of valid authorization cards to demonstrate that the majority of New Life's employees supported the Union; (2) the labor violations were of insufficient severity to warrant a bargaining order; (3) New Life's high employee turnover would permit a fair election to be held without a bargaining order; and (4) Union misconduct during the strike precludes the issuance of a bargaining order. We order enforcement because we conclude that the Board did not abuse its discretion in determining that a bargaining order was required because of New Life's substantial unfair labor practices.
 
 DISCUSSION
 
 2
 New Life challenges the Board's finding that the Union had obtained union authorization cards from the majority of New Life's employees. It also contests the factual basis underlying the Board's findings of unfair labor practices. We must uphold the Board's factual findings if they are supported by substantial evidence. Sahara Datsun, Inc. v. NLRB, 811 F.2d 1317, 1320 (9th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). We may not "displace the Board's choice between two fairly conflicting views, even though [we] would justifiably have made a different choice had the matter been before [us] de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). The credibility determinations of an administrative law judge ("ALJ") may only be reversed if "a clear preponderance of the evidence demonstrates that they are incorrect." Rayner v. NLRB, 665 F.2d 970, 975 (9th Cir.1982).
 
 I.
 VALIDITY OF UNION'S CARD MAJORITY
 
 3
 The Board affirmed the ALJ's finding that the Union had obtained valid authorization cards from 43 of the 79 employees in the bargaining unit. The parties stipulated that seven of the cards were valid. New Life does not contest the validity of nine cards signed by persons who testified at the hearing. The validity of these 16 cards are therefore not before us. New Life challenges the remaining 27 authorization cards on discrete grounds.
 
 
 4
 A. Cards Objected to Because of Misrepresentations.
 
 
 5
 New Life objects to thirteen of the cards because it claims that the cards were solicited by misrepresentations. The cards circulated by the Union in this matter clearly indicate that the signer intends the union to represent him or her in collective bargaining. See NLRB v. Gissel Packing Co., 395 U.S. 575, 606-07 (1969); Sahara Datsun, 811 F.2d at 1321 n. 3. The normal presumption that an employee understands an unambiguous authorization card is not applied if the signer cannot read the language appearing on the card. NLRB v. Bakers of Paris, Inc., 929 F.2d 1427, 1442 (9th Cir.1991). We will, however, consider evidence that the message was translated or otherwise explained. Id. Nevertheless, a card solicited by misrepresentation is not valid. See Gissel, 395 U.S. at 601-10; NLRB v. South Bay Daily Breeze, 415 F.2d 360, 366 (9th Cir.1969), cert. denied, 397 U.S. 915 (1970) (card not valid if the employee is told that the only purpose of the card is to obtain an election); NLRB v. Savair Manufacturing Co., 414 U.S. 270, 277-81 (1973) (card not valid if the employee is told that his or her union fees will be waived if he or she signs the authorization card before the election is held).
 
 
 6
 Ignacio De La Fuente testified that he informed the employees that the purpose of the Union authorization cards was to give the Union authority to represent the employees for collective bargaining. Six of the employees directly corroborated his testimony. Several of the witnesses gave conflicting testimony regarding whether they were told that the authorization card would be used for Union representation. On direct examination, they stated that the purpose of the cards was to enable the Union to represent them. On cross-examination they testified that the cards would be used only for an election. The ALJ found, based on his observation of the demeanor of the testifying employees, that the employees did not understand the significance of New Life's counsel's use of the word "only." He concluded that in some manner each employee indicated that he or she knew that the card was to be used for Union representation. Substantial evidence supports the ALJ's determination that De La Fuente did not misrepresent the purpose of the Union authorization cards was supported by substantial evidence.
 
 
 7
 B. Cards Objected to as Hearsay.
 
 
 8
 New Life also contends that the remaining 14 cards it has challenged were inadmissible under the hearsay rule because the signers did not testify at the hearing. We disagree. A card may be found valid although the person who signed it did not testify at a Board hearing. NLRB v. Howell Chevrolet Co., 204 F.2d 79, 85-86 (9th Cir.), aff'd, 346 U.S. 482 (1953). A card may be authenticated by witnesses who testify that the person actually signed the card or the person whose name appears on the card handed it to them. Id. In Howell Chevrolet, a union organizer gave an employee a card. Id. at 85. The employee handed the signed card back several hours later. Id. We held that the card was valid regardless of who signed it because the employee "clearly adopted it as his own signature." Id. at 86.
 
 
 9
 Although the signers of fourteen of the cards did not individually authenticate their cards, the record demonstrates that their signatures were verified by persons who testified at the hearing. These persons either personally witnessed the employees sign an authorization card or received a signed card from an employee.
 
 
 10
 New Life contends that the cards are inadmissible because the circumstances surrounding this case indicate that the cards are not trustworthy. We disagree. Substantial evidence presented at the administrative hearing supports the finding of the Board that the testimony at the administrative hearing demonstrated that the Union representatives explained the purpose of the cards and did not coerce or intimidate New Life employees.
 
 
 11
 C. Maria Thigpen Affidavits.
 
 
 12
 New Life asserts that the ALJ erred by admitting Maria Thigpen's affidavits into evidence because an insufficient foundation was offered and the affidavits contained inadmissible hearsay.
 
 
 13
 1. Lack of Foundation.
 
 
 14
 New Life asserts that Board Agent Shelley Coppock's testimony, which laid a foundation for the admission of the affidavits, should be struck because New Life was not provided with Coppock's statements which related to the taking of Thigpen's affidavits. New Life contends it was entitled to such statements under the Jencks Act, 18 U.S.C. § 3500. The Jencks Act is applicable to proceedings before the Board. Harvey Aluminum, Inc. v. NLRB, 335 F.2d 749, 754 (9th Cir.1964); 29 C.F.R. § 102.118. The Jencks Act requires the disclosure of statements adopted by witnesses testifying for the government that relate to their testimony. Blackfoot Livestock Comm'n Co. v. Dept. of Agriculture, 810 F.2d 916, 922 (9th Cir.1987). Jencks Act determinations made by an ALJ are reviewed for abuse of discretion. Blackfoot, 810 F.2d at 923.
 
 
 15
 The ALJ reviewed in camera all of the investigative files of the Board to determine which material should be produced pursuant to the Jencks Act. He found "[n]othing dealing with the taking of the affidavits or Shelley Coppock's testimony."
 
 
 16
 Because New Life failed to request that the documents reviewed by the ALJ be placed under seal and preserved in the record, we are unable to make an independent determination whether the ALJ correctly found that the agency's files did not contain material required to be produced under the Jencks Act. "If petitioners wished review of the trial examiner's determination as to the nature of the report, it was incumbent upon them to see that a record was presented upon which review could be had, by requesting that the memorandum be submitted to the court under seal." NLRB v. Seine and Line Fishermen's Union of San Pedro, 374 F.2d 974, 982 (9th Cir.), cert. denied, 389 U.S. 913 (1967) (quoting Harvey Aluminum, 335 F.2d at 756). Since New Life failed to preserve the record for our review, "we cannot say that the ruling was prejudicial even if we assume it was erroneous." Id. (quoting Palmer v. Hoffman, 318 U.S. 109, 116 (1943)).
 
 
 17
 2. Hearsay.
 
 
 18
 New Life asserts that Thigpen's affidavits contain hearsay and were inadmissible. The ALJ found that the affidavits were admissible under Rule 804(b)(5) of the Federal Rules of Evidence.[1] Unfair labor practice hearings should be conducted, to the extent practicable, in accordance with the Federal Rules of Evidence. Paris Bakers, 929 F.2d at 1434. At the hearing, Thigpen stated that she did not want to testify regarding whether David Marson refused to allow her to return to work. After the ALJ ordered her to testify, she stated that she could not remember anything regarding whether she asked Marson to allow her to return to work. We conclude that Thigpen was unavailable as a witness because she "persist[ed] in refusing to testify ... despite an order of the court to do so." Fed.R.Evid. 804(a)(2); see also Fed.R.Evid. 804(a)(3) (witness who cannot remember the subject matter of his or her statement is unavailable).
 
 
 19
 Coppock testified that she interviewed Thigpen in Spanish. Thigpen told Coppock that she could not read Spanish or English. Accordingly, Coppock read Thigpen the contents of the affidavits verbatim before Thigpen signed them. As evidenced by Thigpen's initials, Coppock made corrections where Thigpen instructed her. Before Thigpen signed the affidavits, Coppock swore her to tell the truth. At the hearing, Thigpen testified that she believed that the statements contained in all three affidavits were true when she signed them. Under these circumstances, we conclude that the ALJ did not err in relying on Thigpen's affidavits.
 
 
 20
 New Life also objects to the Union's failure to call Michael Thigpen as a witness. This contention is devoid of merit. There is no evidence that Michael Thigpen was within the control of the Union. See NLRB v. Massachusetts Machine & Stamping, Inc., 578 F.2d 15, 20 (1st Cir.1978) (Where there is no evidence that a witness was peculiarly within the control of either party, no adverse inference arises from the failure of the Board to call the witness). New Life was free to call Michael Thigpen if it believed his testimony would be useful.
 
 II.
 
 21
 VALIDITY OF THE BOARD'S DECISION THAT NEW LIFE'S SUBSTANTIAL
 
 
 22
 UNFAIR LABOR PRACTICES JUSTIFIED A BARGAINING ORDER
 
 
 23
 A. Substantial Unfair Labor Practices Justify Issuance of Bargaining Order.
 
 
 24
 New Life contends that the Board's factual findings are not supported by substantial evidence. Following the issuance of the Board's decision and order in this matter on January 29, 1991, New Life entered into a settlement agreement on May 1, 1991 with respect to the alleged violation of section 8(a)(1) and section 8(a)(3). Pursuant to this settlement the Board seeks enforcement only of its order with respect to New Life's refusal to bargain collectively in violation of section 8(a)(5). In its opening brief, New Life asserts that "[o]nly the Board's finding of a section 8(a)(5) on the part of New Life, and its imposed bargaining order to remedy said violation is before this court for judicial review. Petitioner's Opening Brief at II. The Board agreed that New Life had fully complied with its decision and order with respect to compliance with Section 8(a)(1) and 8(a)(3). Accordingly, New Life has waived its right to challenge the sufficiency of the evidence to support the Board's findings regarding the alleged violations of section 8(a)(1) and 8(a)(3). NLRB v. Nexis Industries, Inc. 647 F.2d 905, 908 (9th Cir.1981). Our task then is to determine whether New Life's conduct, as found by the Board, was sufficiently serious to warrant the imposition of a bargaining order.
 
 
 25
 The Board found that New Life engaged in unfair practices (1) by laying off seven employees after the union filed an election petition and requested bargaining; (2) by soliciting grievances and threatening to close down the plant to avoid unionization; (3) by threatening to fire 23 employees if they responded to a subpoena to appear at a Board hearing; (4) by provoking violent incidents on the picket line. These findings are binding on us as law of the case because New Life did not challenge them on appeal. Beecher v. Leavenworth State Bank, 209 F.2d 20, 22 (9th Cir.1953), cert. denied, 347 U.S. 949 (1954).
 
 
 26
 We review the Board's determination that a bargaining order should issue for abuse of discretion. Peninsula Ass'n, 627 F.2d 202, 204 (9th Cir.1980). "Because the Board possesses specialized knowledge and expertise, we must accord special respect to its estimates of the effects of the unfair labor practices on the election process, and to its choice of remedies." NLRB v. Carilli, 648 F.2d 1206, 1216-17 (9th Cir.1981). Although the justification for a bargaining order is a matter "peculiarly committed to the discretion of the NLRB," Pay'n Save Corp. v. NLRB, 641 F.2d 697, 703 (9th Cir.1981), we must serve as more than a "rubber stamp" for the Board's decisions. NLRB v. Chatfield-Anderson Co., 606 F.2d 266, 268 (9th Cir.1979).
 
 
 27
 In Gissel Packing Co., 395 U.S. 575, the Supreme Court held that a bargaining order was appropriate where (1) the union once held a card majority; (2) the employer committed serious unfair labor practices which, although less outrageous and pervasive than those which would independently justify a bargaining order, tend to undermine the union's majority and impede the election processes; and (3) the likelihood of erasing the effects of the unfair practices and obtaining a fair election by the use of traditional remedies is slight. Id. at 614; NLRB v. Peninsula Ass'n for Retarded Children and Adults, 627 F.2d 202, 204 (9th Cir.1980).
 
 
 28
 New Life's unfair labor practices support the issuance of a bargaining order. New Life management threatened to close the plant if the Union was successful in the election. See NLRB v. Gissell Packing Co., 395 U.S. at 618-19 (upholding issuance of a bargaining order where the employer threatened to close the plant in the event of unionization). New Life management laid off, suspended, and attacked employees. The employer's plant manager physically attacked the union business agent without provocation, on a second occasion physically attacked and severely beat a peaceful picketer, and on a third violent occasion, eight or nine management people rescued others who were encircled by picketers in a fight which escalated to use of a knife. Moreover, New Life refused to reinstate a striking worker. New Life presented no evidence to indicate that the effect of the threats and other actions had been mitigated in any manner. Cf. Chatfield-Anderson, 606 F.2d at 269 (holding that no bargaining order should issue where serious threats made by management were specifically disavowed by the company president before the election was held). Under these circumstances the Board did not abuse its discretion in issuing a bargaining order because of New Life's substantial unfair labor practices. See NLRB v. Gissell Packing Co., 395 U.S. at 614 ... (a bargaining order is appropriate where the employer has engaged in substantial unfair labor practices).
 
 
 29
 B. Employee Turnover.
 
 
 30
 New Life asserts that extensive employee turnover obviated the need for a bargaining order in this case. The Board contends that a bargaining order was necessary because New Life's unfair labor practices would exert a lasting coercive effect on its employees.
 
 
 31
 Generally, we will not remand a case to allow the Board to consider the appropriateness of a bargaining order in light of the passage of time and employee turnover. Bakers of Paris, 929 F.2d at 1448. We have held, however, that an ALJ erred in failing to consider a complete turnover of employees which occurred before the ALJ heard the unfair labor practice charges. NLRB v. Western Drug, 600 F.2d 1324, 1326 (9th Cir.1979) The record in Western Drug failed to indicate that the employer's "past practices would continue to repress employee sentiment long after most, or even all, original participants have departed." Id.
 
 
 32
 At the hearing in this matter, the ALJ determined that approximately half of the persons employed at New Life when the unfair labor practices began remained there at the time of the hearing. The ALJ determined that the turnover of approximately half of the employees did not bar the issuance of a bargaining order because "the lasting effects of the Respondent's offensive conduct cannot easily be eradicated and [ ] a fair election at this facility is improbable." Substantial evidence supports this finding. See Piggly Wiggly, Tuscaloosa Division Commodores Point Terminal Corp. v. NLRB, 705 F.2d 1537, 1543 (11th Cir.1983) (holding that bargaining order should be enforced even though one third of the work force had turned over between the time of the violations and the time of the hearing because "[p]ractices may live on in the lore of the shop and continue to repress employee sentiment long after most, or even all, original participants have departed").
 
 
 33
 c. Union Misconduct.
 
 
 34
 New Life contends that we should deny enforcement of the bargaining order because of the Union's violence and intimidation against New Life. We must give deference to the Board's finding that the Union's misconduct did not merit withholding enforcement of the bargaining order. NLRB v. Triumph Curing Center, 571 F.2d 462, 477-78 (9th Cir.1978).
 
 
 35
 Under the doctrine set forth in Laura Modes Co., 144 NLRB 1592 (1963), if a union "evidences total disinterest in enforcing its rights through the peaceful legal process provided by the Act and instead resorts to violence, the Board will refuse to issue a bargaining order, even though the employer has violated the Act." Triumph Curing Center, 571 F.2d at 475. To determine whether a bargaining order is appropriate, we must balance the unfair labor practices of the employer against the misconduct of the union. Id. Where the union misconduct "obstructs the employees' right to determine whether they want the union to represent them, no bargaining order should be enforced." Id. at 476.
 
 
 36
 Here, the Board found that the Union had only committed a few instances of misconduct which "pales in comparison to Respondent's misconduct which included physical violence against union representatives and striking employees." The Board concluded that the evidence did not establish that the Union "planned a course of violence or intimidation against employees."
 
 
 37
 New Life asserts that the state injunction against the Union for engaging in acts of violence and intimidation against non-striking employees mandates that the bargaining order not be enforced. A restraining order issued by a state court against a union's acts of violence does not necessarily "reflect that the union was foregoing the 'peaceful, legal process.' " Clear Pine Mouldings, Inc. v. NLRB, 632 F.2d 721, 730 (9th Cir.1980), cert. denied, 451 U.S. 984 (1981).
 
 
 38
 Here, the evidence of the Union's strike misconduct was outweighed by the serious and frequent acts of violence engaged in by New Life. See Great Chinese American Sewing Co. v. NLRB, 578 F.2d 251, 256 (9th Cir.1978) (holding that the Board did not abuse its discretion in finding that sporadic picket line violence during the early part of a strike did not preclude the issuance of a bargaining order). Accordingly, we affirm the issuance of the bargaining order.
 
 
 39
 The Board's order is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Rule 804(b)(5) provides that if the declarant is unavailable as a witness, a "statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness" may be admitted